[1] Reported in 158 P.2d 319; 160 P.2d 1023.
This proceeding had its origin in a claim filed by Alex Jullin on August 17, 1943, for benefits under the unemployment compensation act (chapter 162, p. 574, Laws of 1937, as amended by chapter 214, p. 818, Laws of 1939 [Rem. Rev. Stat. (Sup.), §§ 9998-101 to 9998-124, inclusive], as further amended by chapter 253, p. 870, Laws of 1941 [Rem. Supp. 1941, §§ 9998-103a to 9998-123a, inclusive], and as last amended, prior to the commencement of this proceeding, by chapter 127, p. 291, Laws of 1943 *Page 3 
[Rem. Supp. 1943, §§ 9998-103a to 9998-119q, inclusive]). A companion proceeding, In re Baxter, post p. 935, had its origin in a claim filed by Clarence Baxter on June 1, 1943. The two causes were consolidated for hearing before the administrative appeal tribunal, which rendered one decision covering both causes.
For brevity, future references herein to the unemployment compensation act will be made only to the sections as numbered in Rem. Supp. 1943, unless otherwise necessary.
The claim filed by Jullin showed on its face that he had been "separated from work," that is, he had become unemployed, on August 12, 1943, just five days prior to the filing of hisclaim. The importance of this fact will appear later.
On receipt of the claim, the unemployment compensation division, a subordinate division of the office of unemployment compensation and placement, and hereinafter referred to as the Division, purporting to act under the authority of Rem. Supp. 1943, § 9998-106b, made what is termed therein an "initial determination" declaring that "benefits are potentially payable under the law" to the claimant, in a specified weekly benefit amount payable, and to the extent of a specified maximum total amount of benefits potentially payable, during the ensuing "benefit year."
The term "benefit year" is defined in Rem. Supp. 1943, § 9998-119o, as follows:
"`Benefit Year,' with respect to any individual means the fifty-two consecutive week period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits, and thereafter, the fifty-two consecutive week period beginning with the first day of the first week with respect to which the individual next files a valid claim for benefits after the termination of his last preceding benefit year. . . ."
In this instance, Jullin's "benefit year," as so defined, would (if the claim were otherwise valid) extend, as found by the Division, from August 17, 1943, to August 17, 1944. *Page 4 
The claimant's weekly benefit amount, potentially payable, was fixed by the Division in its "initial determination" at fifteen dollars, presumably in accordance with Rem. Supp. 1943, § 9998-103b, which provides:
"An individual's `weekly benefit amount' shall be an amount equal to one-twentieth (1/20) of his total wages during that quarter of his base year in which such total wages werehighest, except that if such amount is more than fifteen dollars ($15.00) the weekly benefit amount shall be deemed to be fifteen dollars ($15.00) . . ." (Italics ours.)
The claimant's maximum total amount of benefits, potentiallypayable, was likewise and at the same time fixed by the Division at two hundred forty dollars, presumably in accordance with Rem. Supp. 1943, § 9998-103d.
The term "base year," referred to above, is defined in Rem. Supp. 1943, § 9998-119p, thus:
"`Base year' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."
The term "calendar quarter," as defined in Rem. Supp. 1943, § 9998-119q, "means the period of three consecutive calendar months ending on March 31, June 30, September 30, or December 31."
Under these statutory definitions, Jullin's "base year," as determined by the Division, ran from April 1, 1942, to April 1, 1943, while, as stated before, his "benefit year" extended from August 17, 1943, to August 17, 1944; and, according to that same "determination," the highest amount of wages received by Jullin during any quarter of his "base year" was $1,091.31, which he had earned while in the employ of St. Paul Tacoma Lumber Company, the respondent in the present appeal.
The record discloses, and it is not disputed, that Jullin, voluntarily and while work was available to him, quit the employ of St. Paul Tacoma Lumber Company on December 19, 1942, eight months prior to the filing of his claim; that he thereafter held several jobs in succession; and that his last employment prior to filing his claim was with Maywood *Page 5 
Logging Company, for whom he worked just twelve days, from August 1, 1943, through August 12th of the same year. The St. Paul 
Tacoma Lumber Company was therefore, and in the record has been designated as, the claimant's "principal employer" during hisbase year, and the Maywood Logging Company was, and has been designated as, his "most recent employer" referent to the commencement day of his "benefit year" as above described.
On completion of its "initial determination," referred to above, the Division gave notice thereof to both the St. Paul 
Tacoma Lumber Company as the "principal employer," and the Maywood Logging Company as the "most recent employer." Thereupon the St. Paul Tacoma Lumber Company, respondent here, being an "interested party" under the statute (Rem. Supp. 1943, § 9998-106b) as interpreted by the commissioner of the office of unemployment compensation and placement, and deeming itself aggrieved by the "initial determination" made by the Division, at once appealed to the appeal tribunal which had been established by the commissioner.
Upon the hearing before the appeal tribunal on October 22, 1943, the Division offered in evidence certain of its office documents consisting of (1) the initial claim for benefits signed and filed by Jullin on August 17, 1943, stating therein that he was unemployed, was able to work, and was available for work, and that he thereby registered for work; (2) the "initial determination" made by the Division with reference to benefitspotentially payable; (3) the notice of such determination, copies of which had been sent to the last employer, Maywood Logging Company, and to the "principal employer," St. Paul 
Tacoma Lumber Company, respectively; (4) a statement of Jullin's wage credits during the base year, showing that the highest amount of wages received by him during any calendar quarter of that base year was $1,091.31, which he had earned while in the employ of the St. Paul Tacoma Lumber Company; (5) Jullin's statement of the reason for his discharge by the Maywood Logging Company (to the effect that the company had charged him with an act of negligence, *Page 6 
but as to which he alleged that he was wholly without fault); (6) the "determination of denial of benefits" to the claimant (but stating therein that there was no disqualifying factor) made by the Division on September 18, 1943; and (7) the office claim-record card with respect to Jullin's claim, showing the various steps taken in the entire proceeding from the time of filing the claim to the entry of the commissioner's final decision affirming the action of the appeal tribunal. This last document, the office claim-record card, contained a numbered list of printed headings calling for information to be supplied, and a form of "certification" to be made, and signed by the claimant. The body of that certificate reads as follows:
"Certification of Waiting Period: I claim benefits under the Washington Unemployment Compensation Law and declare that I am unemployed, able to work, available for work, and I hereby register for work. I have refused no job offered me nor have I failed to apply for any job of which I was notified by the State Employment Office and I have performed no work and earned no wages since I last registered, except as indicated below [no exceptions were indicated]. I have read and understand the notice which is a part of my Identification Card."
Beneath these numbered headings and form of certificate was a space numbered 26 and headed "Claimant's Signature to the above Certification." There is no signature of the claimant in that, or in any other, place on the claim-record card.
The only oral testimony introduced upon the hearing before the appeal tribunal was that of the "Chief of Benefits" of the office of unemployment compensation and placement, which merely explained the position taken by the department with respect to its interpretation of Rem. Supp. 1943, § 9998-106b, relating to the "initial determination" and the notice thereof to the employer.
At the conclusion of the Division's introduction of its documentary evidence above mentioned, the respondent herein, St. Paul Tacoma Lumber Company, interposed a motion that the "initial determination" of benefits potentially payable to Jullin be canceled and voided and that *Page 7 
the records of the Division be corrected so as to reflect such cancellation and, further, to reflect the elimination therefrom of any showing that either a "benefit year" or a "base year" had been fixed with reference to Jullin's claim. The motion was based upon a number of grounds, the substance of which, so far as the present appeal is concerned, was that there was no showing that Jullin was eligible to receive any benefits under his claim and, further, that no valid claim had ever been filed by him.
It is a conceded fact in this case that the Division did not allow, and has never paid, Jullin any benefits whatever under his claim, and that his claim was denied. The reason for this appears to be, as specifically found by the appeal tribunal, that "the record shows that after filing his claim the claimant made no certification for either waiting period credit or benefits to the date of this hearing [October 22, 1943]."
At the conclusion of the hearing before the appeal tribunal, that forum on December 29, 1943, made findings culminating in a decision denying respondent's motion and affirming the "validity" of Jullin's claim and the "initial determination" establishing his base and benefit years. The findings and decision at the same time established the same result with respect to Baxter's claim and respondent's motion in reference thereto. That decision was affirmed by the commissioner on January 18, 1944.
The respondent herein thereupon appealed to the superior court for Pierce county, where a hearing was held upon the departmental record pursuant to Rem. Supp. 1943, § 9998-106i. After such hearing, the superior court on July 25, 1944, entered judgment reciting, as findings: (1) that at the time the claimant Jullin filed his claim he was ineligible, not having at that time completed the required waiting week; (2) that no valid claim for benefits was filed by the claimant with the unemployment compensation division; (3) that the establishment of a benefit year and consequent base year by the Division for the claimant was based upon an uncompleted or invalid claim for benefits; (4) that the commissioner's decision of January *Page 8 
18, 1944, affirming the written decision of the appeal tribunal dated December 29, 1943, is erroneous in law; and (5) that the motion of the appellant (respondent here) made at the hearing before the appeal tribunal on October 22, 1943, is a proper motion and should have been granted. From those findings the superior court ordered and adjudged: (1) that the "initial determination" be canceled and voided; (2) that the records in the office of the Division be corrected so as to reflect the cancellation of the "initial determination" and of benefitspotentially payable thereunder; and (3) that there be eliminated from the records of the Division any showing of a fixation of either a "benefit year" or a "base year" for the claimant by reason of the "initial determination" of benefitspotentially payable to him. The judgment further awarded to the respondent herein an attorney's fee of two hundred dollars. Similar, but separate, findings and judgment were made and entered with reference to Baxter's claim.
From each of those judgments the commissioner on July 25, 1944, appealed to this court.
In order that we may have a clear understanding of the issue involved upon this appeal, it may be well to give a brief summary of the foregoing factual situation, stated in orderly sequence: Prior to December 19, 1942, Jullin, the claimant, was employed by St. Paul Tacoma Lumber Company. While so employed he earned during the last "calendar quarter" of 1942 wages amounting to $1,091.31, which was the highest amount earned by him in any "calendar quarter" involved in this proceeding. He quit the employ of that company on December 19, 1942, voluntarily and while work was there available to him. Thereafter, he was engaged upon several jobs for different employers in succession. On August 1, 1943, he entered the employ of Maywood Logging Company and worked for that company until August 12, 1943, when he was discharged.
On August 17, 1943, five days after his discharge, he filed his claim for unemployment compensation benefits. At no time, however, did he make the necessary certification of waiting period. The Division nevertheless accepted his *Page 9 
claim and on August 25, 1943, made an "initial determination" declaring that benefits were potentially payable to Jullin, during his "benefit year" fixed as extending from August 17, 1943 (the date of filing the claim), to August 17, 1944, computed upon the basis of the highest amount of total wages received by him during any calendar quarter of his "base year," which was contemporaneously fixed as extending from April 1, 1942, to April 1, 1943. Jullin took no further steps to perfect his claim and for that reason the Division eventually denied the claim and has never allowed or paid him any weekly benefits during his "benefit year" as fixed by the Division.
The St. Paul Tacoma Lumber Company promptly appealed from the "initial determination" of the Division relative to benefitspotentially payable to the claimant during his "benefit year" as established by the Division and computed on the basis of the highest calendar quarter amount received by him during his purported "base year." The appeal was decided adversely to the respondent, which was the "principal employer" of Jullin during the alleged "base year." In consequence of that decision, the "initial determination" of the Division, while allowing Jullin no weekly benefits upon his claim as filed, nevertheless still stood upon the records of the Division as the basis for the payment of any subsequent claim for weekly benefits which Jullin might have made during his fixed "benefit year" expiring August 17, 1944. That was the situation when the cause reached the superior court on the appeal of the respondent herein and also when the judgment reversing the action of the Division was entered by the superior court on July 18, 1944.
The issue here involved is this: May the Division, upon the filing of any claim for unemployment compensation benefits, make an "initial determination" of weekly and maximum total benefits "potentially payable" to the individual filing such claim, which "determination," when once made, shall be operative, permanent, and controlling during the period of such individual's "benefit year" as established by the Division in such "initial determination," on the basis *Page 10 
of such individual's "base year" likewise so established, regardless of whether the claim as filed is valid or invalid upon its face or is subsequently shown to be so, and regardless of whether or not such initial claim is eventually allowed and weekly benefits paid thereon by the office of unemployment compensation and placement?
The appellant commissioner contends that the Division has such right. The respondent contends, as the superior court decided, that the Division has no such authority.
From what has been shown above, it is apparent that Jullin's purported "benefit year," extending from August 17, 1943, to August 17, 1944, expired by its terms very shortly after the present appeal was taken by the commissioner. Inasmuch as Jullin has never been allowed or paid anything on his initial claim, and since he himself has taken no appeal from the action of the Division denying his claim and refusing to pay him any weekly benefits, and since the time for his making any further claim based upon the "initial determination" has now fully expired, all questions affecting that claim and all questions that have any possible connection therewith have become moot. For that reason alone, the commissioner's appeal to this court could very properly be dismissed.
However, the question here involved is one which, unless now determined, will necessarily recur, and since both parties herein have devoted themselves solely to the merits of the case, we are justified in now deciding, as we would at some time in the future be required to decide, the matter on the basis of its merits.
The initial procedure with respect to claims for benefits under the unemployment compensation act is prescribed by Rem. Supp. 1943, § 9998-106b, as follows:
"A representative designated by the Commissioner shall take the claim. The Unemployment Compensation Division shall promptly make an initial determination thereon which shall be a determination with respect to whether or not benefits are potentially payable, the weekly benefit amount payable and the maximum amount of benefits potentially payable. The claimant, his most recent employing unit, as stated by the claimant, and any other interested party *Page 11 
which the Commissioner by regulation prescribes shall be notified promptly by the delivery of written notice of the initial determination. The initial determination shall fix the general conditions under which benefits shall be paid during any period of unemployment occurring within the ensuing benefit year. An individual who has received an initial determination finding that benefits are potentially payable to him, shall during his benefit year receive benefits in accordance with such initial determination with respect to any week as to which theconditions of section 4 [Rem. Supp. 1943, § 9998-104] of thisact are met unless the individual is disqualified by theprovisions of section 5 [Rem. Supp. 1943, § 9998-105]hereof. The claimant, his most recent employing unit, or any such interested party to the initial determination may file an appeal from such determination with the Commissioner within ten days after the date of notification or mailing, whichever is earlier, of such initial determination to his last known address. If, upon such initial determination, benefits are allowed, but an appeal is filed relative to the maximum amount of benefits potentially payable or the weekly benefit amount, benefits may, nevertheless, be paid to the extent of the minimum potential benefit amount or weekly benefit amount which the Division of Unemployment Compensation or any party to the appeal shall assert is due the claimant. If the payment of benefits shall be denied to any individual for any week within a benefit year covered by an initial determination, the claimant shall be promptly notified of the denial and the reasons therefor, and may appeal therefrom in accordance with the procedure herein described for appeals from initial determination. A notice that benefits have beendenied, delivered to the claimant in accordance with theforegoing section, shall suffice for all subsequent weeks ofunemployment during which the condition upon which the denial wasbased shall continue and an appeal taken from such notice of denial shall be deemed to be an appeal as to such subsequent weeks. When the Commissioner shall determine that the cause for any denial of benefits has been removed, he shall inform the claimant, his most recent employing unit, and any other interested party, of his decision together with the date of the removal of such cause of denial, and the claimant, his most recent employing unit, or such other interested party, may appeal therefrom within ten days after communication or mailing of such notice, whichever is the earlier. In the absence of an appeal therefrom, a determination by the Commissioner *Page 12 
that the cause for denial of benefits has been removed shall make any pending appeal inapplicable to any period subsequent to the date so determined by the Commissioner, and benefits may be paid for such subsequent period if the claimant is otherwise eligible. Except as herein specifically provided, if an appeal is taken with respect to any claim, benefits shall not be paid to the claimant prior to the final determination of such appeal. If noappeal be taken from the initial determination, a notice ofdenial of benefits, or from the Commissioner's decision of removal of cause of denial of benefits within the time allowed by the provisions of this section for appeal therefrom, said
initial determination, notice of denial of benefits or Commissioner's decision of removal of cause of denial of benefits, as the case may be, shall be conclusively deemed to bejust and correct except as hereinafter provided in respect to consideration by the Commissioner of an initial determination. .. ." (Italics ours.)
Section 4 of the act (Rem. Supp. 1943, § 9998-104), referred to in the last-quoted section, prescribes the benefit eligibility conditions as follows:
"An unemployed individual shall be eligible to receive benefits with respect to any week only if the Commissioner finds that:
"(a) He has registered for work at and thereafter hascontinued to report at an employment office in accordance withsuch regulation as the Commissioner may prescribe. . . .
"(b) He has made a claim for benefits in accordance with the provisions of section 6 (a) of this act;
"(c) He is able to work, and is available for work. . . .
"(d) He has been unemployed for a waiting period of one (1)week. No week shall be counted as a week of unemployment for the purpose of this subsection: . . .
"(2) Unless the individual was otherwise eligible for benefits with respect thereto; . . .
"(e) He has within his base year earned wages of not less than two hundred dollars ($200.00) . . ." (Italics ours.)
Pursuant to § 4 of the act, as just quoted, the commissioner promulgated Regulation 13 with reference to registration and claims for benefits as follows: *Page 13 
"As a condition precedent to any application for benefits an unemployed individual shall register for work at an employment office of the Washington State Employment Service Division, andshall re-register during every calendar week thereafter withrespect to which he shall file a claim for benefits or waitingperiod time." (Italics ours.)
As hereinbefore emphasized, Jullin did not establish compliance with subdivision (d) of § 4 of the act (Rem. Supp. 1943, § 9998-104), in that at the time he filed his claim he had not been unemployed for a waiting period of one week. His failure in that respect was obvious to the Division on the very face of Jullin's claim, and the commissioner could not have legally made a finding to the contrary. Jullin also failed to show compliance with the condition prescribed by Regulation 13, in that he never filed a claim for benefits for waiting period time nor re-registered therefor.
[1] The right to unemployment compensation is founded upon the statute, not upon the common law. MacVeigh v. Division ofUnemployment Compensation, 19 Wn.2d 383, 142 P.2d 900. The unemployment compensation act is in nature and purpose similar to the workmen's compensation act, as to which we have repeatedly held that the rights and remedies thereunder are purely statutory. Denning v. Quist, 172 Wn. 83, 19 P.2d 656;Mattson v. Department of Labor Industries, 176 Wn. 345,29 P.2d 675; Purdy Whitfield v. Department of Labor Industries, 12 Wn.2d 131, 120 P.2d 858.
[2] While the unemployment compensation act is remedial in character and, by its express terms (Rem. Rev. Stat. (Sup.), § 9998-102) enjoins a liberal construction of its provisions "for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum," nevertheless, those who claim rights under the act should be held to strict proof of their right to receive benefits provided by the act. Such is the rule followed in this state in cases involving the kindred workmen's compensation act. Kirk v. Department of Labor Industries, *Page 14 192 Wn. 671, 74 P.2d 227; Clausen v. Department of Labor Industries, 15 Wn.2d 62, 129 P.2d 777.
[3] It is also the rule in cases involving the workmen's compensation act that the burden is upon the claimant to establish the necessary facts. O'Toole v. Department of Labor Industries, 182 Wn. 202, 46 P.2d 388. The same rule applies with equal force to cases arising out of the unemployment compensation act. In Haynes v. Unemployment CompensationCommission, 183 S.W.2d (Mo.) 77, the supreme court of Missouri stated, in the following paragraph, the proper rule in such cases:
"The Unemployment Compensation Law of our state expressly provides that it must be `liberally construed to accomplish its purpose to promote security against unemployment.' Sec. 9422, R.S. 1939, as amended, Laws 1941, p. 566, Sec. 1 Mo. R.S.A. While it has been said that the `unemployment compensation laws are not necessarily designed for the adjustment of rights between employees and employers in the sense that they are adversary litigants' (S.S. Kresge Co. v. Unemployment CompensationCommission, 349 Mo. 590, 162 S.W.2d 838, 841), we think it is apparent that the burden of proof to establish a claimant's right to benefits under the Unemployment Compensation Law rests upon the claimant. Queener v. Magnet Mills, 179 Tenn. 416,167 S.W.2d 1. An unemployed individual is eligible to receive benefits only if the commission finds that the required conditions have been met. The claimant assumes the risk of non-persuasion and we think the general rule applicable to ordinary court proceedings applies. `The burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue. . . . This burden of proof never shifts during the course of the trial.' Downs v.Horton, 287 Mo. 414, 230 S.W. 103, 108; Clapper v. Lakin,343 Mo. 710, 123 S.W.2d 27, 33."
Since, in this case, Jullin did not file a claim in accordance with the provisions of the unemployment compensation act nor conform with the commissioner's regulations, heretofore stated, and since he did not establish the facts necessary to unemployment compensation benefits, his purported claim never attained the proportions of a completed, *Page 15 
valid claim. As to him, therefore, the act furnished no relief and accorded to him no benefits on the claim involved in this proceeding.
The Division, however, proceeding upon a claim which was incomplete and invalid upon its face, assumed to go forward nevertheless and, by a purported "initial determination," authoritatively resolved that benefits were potentially payable
to Jullin during his "benefit year," on the basis of his "base year" as therein fixed by the Division; and, further, despite the fact that the claim for benefits was invalid upon its face, and despite the fact that the claim was subsequently denied, the Division now takes the position that its "initial determination" nevertheless is valid to the extent and for the purpose of fixing the amount of benefits potentially payable to Jullin during the "benefit year," in case Jullin should have made any claim for benefits during that year. Thus, upon an imperfect and initially invalid claim, a definite benefit, envisaging prospective payments at some future time, is conferred upon the claimant and a distinct detriment is imposed upon the employer.
[4, 5] While the administration of the unemployment compensation act is entrusted to the commissioner, his administration thereof must be in accordance with the provisions of the act itself and the rules prescribed thereby. Rem. Supp. 1943, § 9998-111a. Strmich v. Department of Labor Industries,182 Wn. 466, 47 P.2d 990. He is a public officer appointed to administer trust funds. Rem. Supp. 1943, §§ 9998-109a, 109b, 109c, 109d. These trust funds are contributed solely and entirely by the employers subject to the act. Rem. Supp. 1943, §§ 9998-107a, 107b. The employers are therefore vitally concerned in the proper administration and disposition of such funds. The commissioner must administer the act justly and fairly, for the benefit of all concerned, in accordance with law, and unless his powers are so exercised his acts are of no effect. In the case of In re Elvigen's Estate, 191 Wn. 614,71 P.2d 672, we quoted with approval the following statement from 46 C.J. 1033, Officers, § 290: *Page 16 
"Powers conferred upon a public officer can be exercised only in the manner, and under the circumstances, prescribed by law, and any attempted exercise thereof in any other manner or under different circumstances is a nullity."
The effect of what the Division is attempting to do in this instance is to waive the requirements of the statute by accepting an incomplete and invalid claim, and to establish a potential basis upon which an individual, shown to be immediately ineligible to benefits under the act, may nevertheless in the future receive such benefits payable from a trust fund supplied by the employers. The impropriety of such procedure is clearly demonstrated in the companion case of In re Baxter, post p. 935. In the Baxter matter the tribunal made a specific finding that "it appears that he [Baxter] became unemployed due to a labor dispute of only two days' duration and returned to work for the appellant [St. Paul Tacoma Lumber Company, respondent herein]." It also appears in that case that Baxter's claim for benefits was denied by the Division.
Rem. Supp. 1943, § 9998-105, relating to disqualification for benefits, provides:
"An individual shall be disqualified for benefits: . . .
"(f) For any week with respect to which the Commissioner finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: Provided
[reciting certain exceptions not shown to exist as to Baxter]."
Despite this disqualifying factor with respect to Baxter, the Division takes the position, as expressed in its brief, as follows:
"In other words, if Baxter became re-employed (as he actually was) shortly after his initial filing and again became unemployed for a week or more during his benefit year [as fixed by the Division] and at that time filed a request for the payment of benefits, the general conditions under which such claim would be paid would, under the provisions of 6(b) [Rem. Supp. 1943, § 9998-106b], be determined by his initial determination."
(Italics ours.) *Page 17 
That statement would seem to constitute the strongest argument against an assent thereto. If an individual is ineligible to receive any benefits at all under his claim, there is no foundation for giving him a status which will permit him in the future to apply for and receive payments computed solely on the basis of an "initial determination" predicated upon a prior invalid claim.
The injustice of the position taken by the Division, so far as the respondent here is concerned, is further demonstrable. Rem. Supp. 1943, § 9998-107c(2), relating to "experience rating" provides:
"Benefits paid to an unemployed individual during any benefit year shall be charged against the account of the employer from whom the individual earned the most wages during his base year. .. ."
In this instance, respondent was the employer from whom Jullin earned the most wages during the "base year" as established by the Division in its "initial determination." Jullin left the employ of the respondent on December 19, 1942, which was during the third quarter of his established "base year." Under the procedure adopted by the Division, any "potential benefits" which might have been paid to Jullin during his entire "benefit year" ending August 17, 1944, would have been computed on the basis of the amount earned by him while employed by the respondent and also would have been chargeable against the account of the respondent. If Jullin had first filed a claim at any time after March 31, 1944, his "base year," if established at that time, would not have reached back further than January 1, 1943, and, in consequence thereof, his weekly benefits would not have been computed on the basis of the amount earned by him while employed by the respondent in the last calendar quarter of 1942, nor would respondent's account be charged with any weekly benefit thereafter paid to Jullin. Under the procedure adopted by the Division, however, any such weekly benefits which might have been paid to Jullin between April 1 and August 17, 1944, would still have been computed and paid on the basis of the amount earned while employed by the respondent and would have *Page 18 
been chargeable to respondent's account. The situation would have been even more flagrant had respondent been Jullin's employer during the first quarter of the purported "base year," and his benefits computed on the basis of his earnings during that quarter rather than during the third quarter thereof.
[6] The legal situation with respect to the Division is simply that the Division had no right or power to make any finding or "initial determination" that Jullin's claim was "valid," when the very claim on its face showed that it was incomplete and insufficient, and when the very proceedings taken by the Division in making the "initial determination" disclosed to it not only that the claim was premature (having been filed before the expiration of the necessary waiting period) but also that Jullin had failed to comply with the conditions necessary to establish a valid claim. It was incumbent upon Jullin to file a claim which in form was, at least, prima facie valid, and to support the claim with substantial compliance with the conditions of eligibility to weekly benefits. In the absence of a claim of that validity the Division had no right to proceed to make an "initial determination," and, upon Jullin's failure to comply with the eligibility conditions, any prior "initial determination" by the Division became ineffective and valueless. To hold otherwise would permit the Division to fix an improper "base year" and "benefit year," to the prejudice of vitally concerned employers, and on such basis pay weekly benefits on future claims filed within such "benefit year," to the prejudice of employers and to the detriment of the fund in which all employers and all employees generally have a vital interest.
The Division makes an earnest plea in support of its interpretation of the act and in support of the procedure followed by it in this instance, on the ground that to destroy or cancel the "initial determination" would (1) cause a delay ofseven days in the payment of benefits to unemployed individuals, and (2) require the Division to "reprocess," at great labor and expense, all of its records merely for the purpose of making, in each case similar to those involved *Page 19 
here, a new "initial determination" during a "benefit year" already established.
It will be remembered that in this case we are not concerned with weekly benefits actually payable to the claimant upon an established claim, but only with benefits "potentially payable" upon a claim that was invalid upon its face and was never completed.
The matter of delay, suggested by the Division, is one specifically created by the act itself, and brief reflection will supply the reason therefor. The legislature evidently considered it wise and proper that a "waiting period" of one week should intervene the date of "separation from employment" and the filing of a claim for unemployment compensation. If that requirement is found to work a hardship, the remedy should be sought from the legislature, but the requirement should not be overridden by the deliberate action of the Division. As to the matter of additional work and expense on the part of the Division in "reprocessing" claims, that is at least a debatable question. In any event, if the Division takes proper precaution to see that claims which are filed comply with the statute, it will not find itself in the position of having made a useless "initial determination," nor be required to duplicate its work at added expense. Aside from that, however, the question here is not merely one of possible delay, duplication of work, and expense, but whether the act has indeed been administered justly and fairly to all concerned in the proper distribution of a trust fund.
For all the reasons hereinbefore given, the judgment of the superior court is affirmed.
BEALS, C.J., MILLARD, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.