[Nos. 31411, 31412. Department One. February 15, 1951.]

IRA V. ROBINSON et al., Respondents, v. RODERIC OLZENDAM, as Director of the Department of Social Security, Appellant.

FRED I. MUNSON et al., Respondents, v. RODERIC OLZENDAM, as Director of the Department of Social Security, Appellant.[1]

[1]Reported in 227 P. (2d) 732.

*The Attorney General* and *Jane Dowdle, Assistant,* for appellant.

DONWORTH, J.—Plaintiffs Ira V. Robinson and his wife, Libby H. Robinson, and plaintiffs Fred I. Munson and his wife, Rose F. Munson, were recipients of senior citizen grants under the provisions of initiative No. 172 (Rem. Supp. 1949, § 9998-33a *et seq.*). Feeling dissatisfied with the amount of assistance awarded them by the Whatcom county welfare department, these plaintiffs each requested a fair hearing thereon before the director of the state department of social security. The two hearings were had and thereafter the director approved the recommendations of the Whatcom county welfare department as to each of the plaintiffs.

Plaintiffs, being of the opinion that they were each entitled to a grant in a greater amount, appealed from the departmental order to the superior court for Whatcom county. The two cases were argued simultaneously, inasmuch as the issues involved were identical, and the superior court reversed the decisions of the director. From judgments entered remanding these matters to the director for a redetermination of the respective grants, the director has appealed.

A stipulation for the consolidation of the two cases for hearing and the submission of briefs before this court was

entered into between the parties and their respective counsel.

After the case was submitted, we found that the trial court's certificate attached to the statement of facts was defective in certain particulars and the causes were remanded in order that the certificate might be amended. *Robinson v. Olzendam,* 37 Wn. (2d) 336, 223 P. (2d) 605. A satisfactory amended certificate was signed by the trial court January 12, 1951, and thereafter filed in this court.

Respondents have not appeared in this court and have filed no brief so that the cause will be deemed submitted upon its merits as to them. Hereafter in this opinion, we will refer to Ira V. Robinson and his wife and Fred I. Munson and his wife as the recipients. The department of social security will be referred to as the department.

Since initiative 172 (Laws of 1949, chapter 6, p. 24) provided for a statutory minimum of sixty dollars, that figure was used by the department as the basic amount of need in computing each grant.

In the case of Ira V. and Libby H. Robinson, the department deducted old age and survivors insurance payments of $17.94 and $17.93 from the sixty-dollar figure for each. A use value of $13 per month was assigned to their home. The cost of taxes, insurance and general upkeep in the amount of $5.08 was subtracted from the $13, which resulted in a net use value of $7.92. This amount was divided by two, so that $3.96 was deducted from the grant to each recipient, resulting in a net need of $38.10 and $38.11 respectively.

In the case of Fred I. Munson and Rose F. Munson, the department found the total actual need of each to be $52.97 and $54.18 respectively, but sixty dollars was allowed in each instance because that sum was the minimum need specified in the act. The only resource owned by them was their home to which was assigned a use value of $13 per month. This amount, less the cost of taxes, insurance and general upkeep in the sum of $4.13, left a net use value of $8.87, which was divided between the two recipients, showing an income of $4.44 for the husband and $4.43 for the

wife. This computation resulted in old age grants in the sum of $55.56 and $55.57, respectively.

The sole issue presented by the appeals in these cases is whether the department acted arbitrarily and capriciously in assigning the thirteen dollars per month as the use value of the homes owned and used by recipients.

Section 2 of initiative 172 (Rem. Supp. 1949, § 9998-33b) provided in part as follows:

"It is hereby declared to be the intent of the people of the State of Washington to take the fullest possible advantage of the provisions of the Federal Social Security Act to provide grants and other assistance to Senior Citizens, and others covered by this act, as liberally as is consistent with receiving matching funds under the terms of the Federal Social Security Act."

Section 17 of initiative 172 (Rem. Supp. 1949; § 9998-33q) expressly provided:

". . . If any plan of administration of this act submitted to the Federal Security Agency shall be found to be not in conformity with the Federal Social Security Act by reason of any conflict of any section, portion, clause or part of this act and the Federal Social Security Act, such conflicting section, portion, clause or part of this act is hereby declared to be inoperative to the extent that it is so in conflict, and such finding or determination shall not affect the remainder of this act."

Evidence adduced at the fair hearings showed that one of the requirements of the Federal security agency, with which the state department of social security must comply in order to secure Federal matching funds, was that, in determining need, consideration must be given to any other income and resource of the recipient. It was required by the Federal security agency that a home owned by the recipient must be considered such a resource but no specific method for evaluating this resource was prescribed. Accordingly, § 3 (h) of initiative 172 (Rem. Supp. 1949, § 9998-33c) defined resources, to be considered by the department, as

". . . any asset which may be applied toward meeting the needs of an applicant or recipient, including real

and personal property holdings contributing toward the maintenance of the applicant or recipient or representing investments or savings which may be drawn upon for maintenance purposes. . . ."

By section 10 of initiative 172 (Rem. Supp. 1949, § 9998-33j), it is provided that

"The Department is hereby authorized to make rules and regulations not inconsistent with the provisions of this act to the end that this act shall be administered uniformly throughout the state, and that the spirit and purpose of this act may be complied with. Such rules and regulations shall be filed with the Secretary of State thirty (30) days before their effective date, and copies shall be available to the public upon request."

Initiative 172 was passed on November 2, 1948, and became effective January 1, 1949. Pursuant to the above-quoted section, the department, within the short space of time between the enactment of the law and its effective date, promulgated rules and regulations which gave consideration to a home as a resource and assigned a use value of thirteen dollars per month for all counties except Clark, King, Kitsap and Pierce. In the last-named counties, a use value of sixteen dollars per month was assigned.

In 1946 (long prior to the enactment of initiative 172) the department, in an effort to secure Federal matching grants under initiative 141 (Laws of 1941, chapter 1, p. 3), made a statistical study of rental values. As a result, the department established a maximum and minimum range for rentals for various sizes of homes. The department at that time used the minimum figure as the use value of a home, this being six dollars per month for Whatcom county. This plan was approved by the Federal security agency and was the last statistical study of rentals made by the department.

In dealing with initiative 172 (which was enacted by the people November 2, 1948), it was necessary for the department to have instructions as to procedure in the hands of county welfare departments by the end of November, 1948. Therefore, the department had to use data already available to determine use value. The statistical consultant on

standards of assistance of the department testified that both assessed and market value of homes owned by recipients of grants were given consideration as a possible basis for determining use value. However, neither method was feasible since the necessary information on market values was not available and assessed values varied widely from county to county.

The most feasible solution of the problem, according to the statistical consultant, and the one ultimately put into effect, was based on the assumption that the use value of homes owned by recipients was the same as the rental value of homes rented by recipients who did not own homes. There were available in the department records of rents being paid currently by such recipients throughout the state. The statistical consultant selected the median rental amount or the midpoint of all such rentals as being the most equitable measure of use value, after a careful evaluation of other possible standards.

An analysis of rentals paid by such recipients showed that they paid more for rent in Clark, King, Kitsap and Pierce counties than in other counties in the state. As a result, the median rental being paid in these four counties was found to be sixteen dollars and the use value of homes was fixed at that figure. In all other counties the use value was established in the same manner at thirteen dollars per month. These figures were used by the department irrespective of the size or type of construction of the homes. The net use value was determined by deducting any expenses necessary to maintain the home, such as taxes, insurance, contract payments and cost of current upkeep.

The basis of the trial court's decision was stated as follows:

"But what disturbs me in this case is the fact that in 1946, after a comprehensive survey and the gathering of much information and statistics and data on costs and what not, the Department did determine the matter and decide on a reasonable rental net income to be used in connection with those who own their homes. That was approved by the government, as I understand, and was followed, and now two years later when the costs of upkeep have changed

admittedly, and having available no new study by which they may reasonably operate, they themselves change their own plan. . . .

". . . But in view of the facts in this case, I doubt very much in my own mind we can say that in 1949, in view of what they did, they exercised a sound discretion. It seems to me it was not based upon study and consideration of facts. Either that, or it must be admitted their earlier method was in error. In the absence of a new survey which would bring them up to date so they could actually consider the factual situation as it now exists, I don't see how they could reasonably depart from something which has been approved and in effect for two years in this state. Their sole purpose was to cut the size of grants. It would seem to me that their action, therefore, was arbitrary and should not be approved by this Court, and that they should return to the approved results until time permits them from study and first-hand facts which they gather to intelligently make and devise some new figure to be employed and used."

In concluding his decision, the trial judge said:

"I didn't mention it, but my feeling is prompted partly by the thought that under the initiative I believe it was the intention of the voters that the State should be most liberal in seeking matching funds from the Federal Government consistent with their policy, and that basing a new plan upon old statistics, which were gathered years ago, the Department did admittedly depart from that policy, because they are decreasing the grants, in effect, to home owners by departing from the plan which was approved and in the face of increased upkeep costs. All those things combine in my conclusions in the case."

The judgment entered by the trial court contained the following provision:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this matter be and the same is hereby remanded to the Director of Social Security for a redetermination of the grant of plaintiffs, Fred I. Munson and Rose F. Munson, his wife, in accordance with the decision of this court, namely, that the establishment of $13.00 as the use value for their home to be deducted from their needs is arbitrary, capricious and unlawful, and that the sum of $6.00 previously determined by the Department of Social Security, as hereinabove set forth, is a reasonable and proper deduction

until such time as a new survey of the actual use value of occupancy of a home can be made by the department, and statistics compiled on which to base a new determination of use value."

(An identical judgment except for the names of the parties was entered in the Robinson case.)

■ This court has expressed the view that courts should let administrative boards and officers work out their problems with as little judicial interference as possible. One of the primary reasons for the creation of administrative agencies is to secure the benefit of special knowledge acquired through continuous experience in difficult and complicated fields. To unduly restrict the operations of administrative bureaus would defeat the very purpose for which they have been established.

In *Morgan v. Department of Social Security*, 14 Wn. (2d) 156, 183, 127 P. (2d) 686, this court in considering the activities of the social security department commented as follows:

"The machinery required to handle such very considerable operations must necessarily be complicated, and involve endless details and adjustments. Such a task, to be successfully accomplished, must be performed by an efficient administrative department of the executive branch of the government. When such a department is functioning honestly, fairly, without fear or favor, and in accordance with the law, the less it is interfered with the better.

"Universally, courts are loath to interfere with the work of an administrative department of the state, save in so far as questions of law are involved. In some classes of cases, it is the general rule that departmental orders, based upon administrative discretion, will not be reversed by the courts unless it appears that in making the orders the department acted arbitrarily or capriciously, or proceeded on a fundamentally wrong basis. Of course, if it be contended that an administrative order contravenes, or is not supported by, the statute, it is subject to judicial review.

"In the case of *Sweitzer v. Industrial Ins. Commission*, 116 Wash. 398, 199 Pac. 724, this court considered an appeal by the department from a judgment of the superior court reversing a departmental award in favor of an injured

workman. The trial court held that an order of the commission was 'arbitrary and capricious and not in accordance with the facts and the law and statutes in such case made and provided.' In reversing the judgment of the superior court, this court said:

" 'The most that can be said of their action, even from the respondent's point of view, is that they erred in judgment. But this is not arbitrary or capricious action. These terms, when used in this connection, must mean wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached.' "

■ After a thorough study of the record, we do not find sufficient evidence to justify a holding that the department acted in an arbitrary or capricious manner. Nor can we find support for the trial court's statement that the department's purpose in adopting the thirteen-dollar figure for home use value was to reduce the size of the grants to recipients. The department used what it considered the best available method in determining home use value under the provisions of initiative 172, after giving due consideration to several possible methods of computation. We cannot say that it was unreasonable for the department under the circumstances to have concluded that recipients who own their homes should be assigned a use value equivalent to the median amount of rental that those same home owners would presumably have been required to pay for housing if they had not owned their homes.

There was room for difference of opinion as to whether the *minimum* figure of six dollars (used in the 1946 survey) or the *median* figure of thirteen dollars (the median of rentals paid by non-homeowning recipients in 1948) was more accurate. Even if the department was in error in its determination, it exercised its honest judgment in this matter and, therefore, the trial court should not have held that the department acted arbitrarily, capriciously or upon a fundamentally wrong basis in these cases.

The judgments of the superior court for Whatcom county are reversed with instructions to enter an order affirming the decision of the department in each case.

BEALS, HILL, and GRADY, JJ., concur.

[1]Reported in 227 P. (2d) 727.