[No. 31702. Department One. September 6, 1951.]

*In the Matter of* ANDREW BERNARD ANDERSON.
BOEING AIRPLANE COMPANY, *Respondent,* v. THE COMMISSIONER OF THE EMPLOYMENT SECURITY DEPARTMENT, *Appellant.*[1]

[1]Reported in 235 P. (2d) 303.

*The Attorney General* and *William J. Millard, Jr., Assistant,* for appellant.

*Holman, Mickelwait, Marion, Prince & Black, William M. Holman,* and *Burroughs B. Anderson,* for respondent.

*L. Presley Gill, amicus curiae.*

BEALS, J.—Andrew Bernard Anderson was employed by the Boeing Airplane Company, a corporation, at Seattle from April 14, 1947, to November 25, 1949. During the latter portion of this employment, he was classified as an "Assembler-Installer Electric and Radio 'A'," receiving $1.63 an hour, plus a bonus of ten cents an hour when working on the second shift.

November 25, 1949, Anderson was informed that there was a surplus of workers in the "A" classification and was offered a transfer to another work area at the same general type of work but with a "B" classification, at a wage of $1.43 an hour for the first shift. Anderson refused to accept the transfer and quit work. Four days thereafter, he received a "termination slip," effective as of November 30, 1949, containing a notation, "Declines transfer to other available work."

December 9, 1949, Anderson filed an application for "Initial Determination" of his rights as a claimant under the

applicable section of the Washington unemployment compensation act.

On the same day, Anderson signed the following statement:

"I was last employed on 11-28-9 as a electrician by Boeing Airplane Co. and worked at Seattle. The wages were at the rate of $1.73 per hour for 8 hours per day 5 days a week.

"I have been employed by this employer since 4 years. This employment was terminated because: Vol. quit. I quit mainly because I was transferred to an outside job. I had been ill last winter and I did not want to work outside again. Also they cut my pay. However, I would have stayed on the job had not my pay been cut. I am able to work."

The unemployment compensation representative of the benefit division of the employment security department determined that Anderson "left work voluntarily without good cause," and denied him any "Benefit" under the statute.

Anderson appealed from this ruling to the "appeal tribunal" of the employment security department. After a hearing, the following findings of fact were made:

"The appellant is a former employee of the Boeing Airplane Company, Seattle, Washington, where he was employed from April 14, 1947, until November 28, 1949. He was classified as an Assembler Installer Electric and Radio 'A' at $1.63 an hour, plus a ten cent bonus for the second shift. On Monday, November 28, 1949, he was informed that there was a surplus of workers in the 'A' classification and was offered a transfer to another work area in the same type of work but with a 'B' classification, at the wage rate of $1.43 an hour, on the first shift. The appellant refused this transfer and went home. On the fourth day he received a termination slip from the Company, effective as of November 30, 1949, and under REMARKS giving the reason for termination as 'Declined transfer to other available work.'

"On December 9, 1949, the appellant signed a statement informing the local employment office that he voluntarily quit his job mainly because he was transferred to an outside job. He had worked outside the winter before and had been ill as a result of it. He also stated that he was given a cut in pay and he would have remained on the job if his pay had not been cut.

"The appellant testified at the hearing that he had worked outside before and found it to be unsatisfactory chiefly be-

cause of exposure to the cold weather. He would have accepted the transfer if he had not been reduced in classification from an 'A' to a 'B' rating."

After entering an appropriate conclusion, the ruling of the unemployment compensation representative was affirmed and Anderson's claim for benefits denied.

Anderson then appealed to the commissioner of the employment security department, who reversed the order appealed from and directed that Anderson be allowed benefits "for all weeks for which the claimant has reported and been in all other respects eligible."

From this ruling of the commissioner, the employer, Boeing Airplane Company, appealed to the superior court, where the matter was heard upon the record, the company being represented by its counsel, and the commissioner by the attorney general.

After the trial, the court entered findings of fact and conclusions of law to the effect that the claimant, Anderson, was not justified in quitting work and should be disqualified for benefits under the statute. The court then entered a judgment reversing the decision of the commissioner and reinstating the decision of the appeal tribunal. From this judgment, the commissioner has appealed to this court and presents the following assignment of errors:

"(1) The court erred in substituting its Findings of Fact for those of the Commissioner of the Employment Security Department.

"(2) The court erred in failing to consider the application of Section 78 of the Unemployment Compensation Act (Rem. Supp. 1945, § 9998-216).

"(3) The court erred in denying unemployment compensation benefits to the claimant for the period in question."

The unemployment compensation act provides that, in all court proceedings under or pursuant thereto, the decision of the commissioner shall be *prima facie* correct, and the burden of proof shall be upon the party attacking the same. The act also provides that, on appeal to the superior court, the proceeding shall be heard as an equitable action. The statute further provides that, if the court determines that the com-

missioner has acted within his power and has correctly construed the law, his decision shall be confirmed, otherwise it shall be reversed or modified. An appeal to this court lies from the judgment of the superior court as in other civil cases. Laws of 1945, chapter 35, §§ 128, 131, pp. 143, 145, Rem. Supp. 1945, §§ 9998-266, 9998-269.

The following provisions of the unemployment compensation statutes are pertinent:

Laws of 1949, chapter 214, § 12, p. 690, Rem. Supp. 1949, § 9998-211: *"Disqualification for Voluntary Quit.* An individual who has left work voluntarily without good cause shall be disqualified for benefits for a period of five (5) weeks in each of which he has filed a claim for waiting period credit or benefits and was otherwise eligible: *Provided,* That acceptance of subsequent work shall terminate the disqualification."

Laws of 1949, chapter 214, § 15, p. 691, Rem. Supp. 1949, § 9998-214: *"Disqualification for Refusal to Work.* An individual shall be disqualified for benefits, if the Commissioner finds that he has failed without good cause, either to apply for available, suitable work when so directed by the employment office or the Commissioner, or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the Commissioner. Such disqualification shall continue for a period of five (5) weeks in each of which he has filed a claim for waiting period credit or benefits and was otherwise eligible: *Provided,* That acceptance of subsequent work shall terminate the disqualification."

Laws of 1945, chapter 35, § 78, p. 116, Rem. Supp. 1945, § 9998-216: *"Suitable Work Factors.* In determining whether or not any such work is suitable for an individual or whether or not an individual has left work voluntarily without good cause, the Commissioner shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings; his length of unemployment and prospects for securing local work in his customary occupation, the distance of the available work from his residence, and such other factors as the Commissioner may deem pertinent, including state and national emergencies."

Laws of 1945, chapter 35, § 79, p. 116, Rem. Supp. 1945, § 9998-217: *"Suitable Work Exceptions.* Notwithstanding

any other provisions of this act, no work shall be deemed to be suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions:   . . .

"(b) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;
. . ."

The statute does not purport to state a specific definition of the phrase "without good cause," but makes that question one for the commissioner to determine. Rem. Supp. 1945, § 9998-216, *supra*, refers to certain factors to be considered by the commissioner in determining whether a voluntary termination of employment by an employee was with or without good cause. In other respects, the language of the statute should be construed according to its apparent and ordinary meaning.

From the record before us, it appears that respondent employer ceased to have available employment for Anderson in the type of work designated as class "A" but did have employment for a workman in class "B". This latter work was of the same general kind and class as that in which Anderson had previously been employed, but the wage scale was twenty cents an hour less, the opportunity to be called to work on a second shift (for which an additional ten cents an hour would be paid) was not open to the employee, and the work offered would have been outside of the building of the employer instead of inside the building, where class "A" work was performed.

It is undoubtedly true that an employee might be justified in voluntarily terminating his employment, if called upon to work for substantially reduced wages or under less favorable conditions; but each phase would be a matter of degree, and the circumstances surrounding each case should certainly be considered by any authority called upon to determine whether or not the employee had good cause to leave his employment.

An employee might well be justified in terminating his employment, if transferred from available work to work of

a substantially different nature, or even of the same nature but paying a lower wage or requiring work under less favorable conditions.

On the other hand, a different situation would be presented if the employer no longer had occasion to use the employee in the work he had formerly performed, either permanently or temporarily, but could continue the employment in some lesser but related capacity.

In their respective briefs, counsel have cited many departmental rulings and judicial decisions in this and other jurisdictions, apparently agreeing that the precise question here in issue has not heretofore been before this court for consideration.

The question before us is a very narrow one, namely, whether the commissioner correctly concluded that the transfer of Anderson from class "A" to class "B" employment, under the circumstances disclosed by the record, justified his voluntary termination of his employment.

The departmental official who first considered the claim and the appeal tribunal were of the opinion that Anderson's voluntary termination of his employment was without good cause, while the commissioner ruled to the contrary.

On appeal, the superior court, upon the same record, reversed the ruling of the commissioner.

According to Anderson's signed statement, above quoted, he terminated his employment because of the reduction in his hourly rate of pay and the loss of an occasional opportunity to be placed on another shift for which he would receive an additional ten cents an hour. His statement clearly indicates that he would have continued in respondent's employ, had his pay not been reduced.

Appellant contends that the trial court substituted its findings of fact for those approved by the commissioner, and failed to give due consideration to Rem. Supp. 1945, § 9998-216, arguing that, pursuant to Rem. Supp. 1949, §§ 9998-211, 9998-214, and Rem. Supp. 1945, § 9998-216, *supra,* the commissioner was vested with a certain discretion in ruling upon the question of Anderson's rights under the statute.

Respondent argues that there is no question of fact involved, as the commissioner adopted the findings of the appeal tribunal but drew therefrom a different conclusion of law. Respondent further contends that there is only one question before us, namely, whether the reduction of Anderson's pay justified his refusal of offered work and leaving his job.

Appellant's contention that the trial court substituted its findings of fact for those approved by the commissioner is without merit. The trial court found the facts in accordance with the findings of the appeal tribunal, which had been adopted by the commissioner, but held that, under the pro-- visions of the statute, giving due consideration to Rem. Supp. 1949, § 9998-211, Anderson was not entitled to the benefits sought.

■ The record does not disclose that appellant presented to the trial court any contention that the court's findings were conclusions of law rather than findings of fact. No such question may be presented here. *Ach v. Carter*, 21 Wash. 140, 57 Pac. 344; *Lauridsen v. Lewis*, 50 Wash. 605, 97 Pac. 663.

In *Montreal Mining Co. v. Industrial Commission*, 225 Wis. 1, 272 N. W. 828, the court observed that a finding of an employer-employee relationship is a conclusion of law rather than a finding of fact.

In the case of *In re St. Paul & Tacoma Lbr. Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877, this court, in considering claims for unemployment compensation, said:

"Looking to the quoted portion of the act in question relative to appeals taken to the superior court, and having in mind our former decisions relative to statutes of this nature, we are constrained to hold that the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious. It seems certain that the court which tries the case sits as a court of equity with limited powers. The court shall review the issues of law which have been previously raised. The court shall review the power of the commissioner to act. The court shall review the facts only in so far as it is neces-

sary to determine whether the commissioner has acted arbitrarily or capriciously, and whether he applied properly the law to those facts."

The case last referred to has been frequently cited with approval in our subsequent decisions.

In *Wicklund v. Commissioner of Unemployment Compensation*, 18 Wn. (2d) 206, 138 P. (2d) 876, 148 A. L. R. 1298, an action concerning claims for benefits by way of unemployment compensation, we said:

"It is our function upon this appeal, accepting as verities the findings of the commissioner, to determine whether the commissioner correctly construed the law applicable to those facts."

In the case of *In re Employees of Buffelen Lbr. & Mfg. Co.*, 32 Wn. (2d) 205, 201 P. (2d) 194, in reversing a judgment of the superior court affirming a decision of the commissioner which allowed unemployment compensation benefits, this court said:

"The substance of our holding has been that the ascertainment of the facts are, subject to certain qualifications, left to the commission, while the determination of law has been retained in the courts. This was as far as the legislature could go, because it could not take from the courts the right to determine the law. Neither may courts surrender the duty imposed upon them by the constitution to determine the law."

In the case of *In re Foy*, 10 Wn. (2d) 317, 116 P. (2d) 545, we said:

"In our recent opinion, *In re St. Paul & Tacoma Lumber Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877, it was held that the administrative findings of fact entered in the course of the departmental proceeding are conclusive upon review of a commissioner's ruling by the courts, unless not supported by substantial evidence in the record. It was held that the courts would review departmental rulings upon questions of law, and also examine the record for the purpose of determining whether, in connection with matters of fact, the action of the department should be held arbitrary or capricious. The later cases of *In re Farwest Taxi Service*, 9 Wn. (2d) 134, 114 P. (2d) 164, and *Virginia Mason Hospital Ass'n v. Larson*, 9 Wn. (2d) 284, 114 P. (2d) 976, are to the same effect."

In *Leggerini v. Department of Unemployment Compensation*, 15 Wn. (2d) 618, 131 P. (2d) 729, we said:

" . . . The findings and decision of the department of unemployment compensation and placement as to eligibility of claimant for benefits, must be based on competent evidence."

In *Jacobs v. Office of Unemployment Compensation*, 27 Wn. (2d) 641, 179 P. (2d) 707, in affirming a judgment of the superior court which affirmed a decision of the department of unemployment compensation and placement denying a claim for benefits, this court said:

"In our consideration of this question, we proceed upon the general rule applicable to such proceedings, namely, that the burden of proof to establish a claimant's rights to benefits under the act rests upon the claimant. *Haynes v. Unemployment Compensation Comm.*, 353 Mo. 540, 183 S. W. (2d) 77; *Copeland v. Oklahoma Employment Security Comm.* (Okla. 1946), 172 P. (2d) 420. . . .

"The decisions from this state are in accord with that rule. *In re St. Paul & Tacoma Lbr. Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877; *Andreas v. Bates*, 14 Wn. (2d) 322, 128 P. (2d) 300; *In re Polson Lbr. & Shingle Mills*, 19 Wn. (2d) 467, 143 P. (2d) 316."

In the case of *In re Jullin*, 23 Wn. (2d) 1, 158 P. (2d) 319, 160 P. (2d) 1023, this court, sitting *En Banc*, said:

"While the unemployment compensation act is remedial in character and, by its express terms (Rem. Rev. Stat. (Sup.), § 9998-102) enjoins a liberal construction of its provisions 'for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum,' nevertheless, those who claim rights under the act should be held to strict proof of their right to receive benefits provided by the act."

In *Heater v. Corsi*, 270 App. Div. 311, 59 N. Y. S. (2d) 793, the court said:

"The Unemployment Insurance Law was never intended as a guarantee that a claimant might always obtain benefits unless he was offered employment at precisely the same level of skill at which he was last employed."

The trial court reviewed the record on appeal in accordance with the statutory direction and entered substantially

the same findings of fact which the commissioner accepted when the proceeding came before him for consideration. The record before us contains no indication that the trial court did not consider, in their entirety, the sections of the act which it was the duty of the commissioner and the court to consider in determining the question of whether good cause existed for Anderson's voluntary termination of his employment.

Examination of the record before us, and consideration of our decisions and other pertinent authorities, convinces us that Anderson was not justified in terminating his employment with the expectation of receiving benefits under the statute. He should have accepted the employment offered, even though the wage would have been somewhat less than that which he had previously received.

The trial court correctly held that Anderson voluntarily terminated his employment without good or sufficient cause, and for this reason was disqualified to receive unemployment compensation benefits.

The judgment appealed from is affirmed.

SCHWELLENBACH, C. J., HILL, and DONWORTH, JJ., concur.

FINLEY, J. (dissenting)—The unemployment compensation act provides that the commissioner of the employment security department shall have the right to disqualify claimants for a specified period of time if they have left work voluntarily without good cause; or if, without good cause, they have refused to accept suitable work offered to them. Rem. Supp. 1949, §§ 9998-211, 9998-214. To aid him in determining whether claimants should be disqualified for either of these reasons, the commissioner is given the broad authority to consider their "prior training . . . experience and prior earnings, . . .   and such other factors as the Commissioner may deem pertinent . . ." Rem. Supp. 1945, § 9998-216. His decision is to be considered *prima facie* correct and the burden of proof is on the party attacking it. Rem. Supp. 1945, § 9998-269.

The reasonableness of this is apparent. Employees quit, or refuse work under a variety of circumstances, as a refer-

ence to the CCH Loose Leaf Unemployment Insurance Service will readily reveal. No case is precisely like any other and in order to function at all the commissioner must be given a wide latitude in making his decisions. The language we used with reference to the department of social security in the case of *Robinson v. Olzendam*, 38 Wn. (2d) 30, 227 P. (2d) 732, is particularly appropriate here:

"This court has expressed the view that courts should let administrative boards and officers work out their problems with as little judicial interference as possible. One of the primary reasons for the creation of administrative agencies is to secure the benefit of special knowledge acquired through continuous experience in difficult and complicated fields. To unduly restrict the operations of administrative bureaus would defeat the very purpose for which they have been established."

In *Morgan v. Department of Social Security*, 14 Wn. (2d) 156, 183, 127 P. (2d) 686, this court in considering the activities of the social security department commented as follows:

" 'The machinery required to handle such very considerable operations must necessarily be complicated, and involve endless details and adjustments. Such a task, to be successfully accomplished, must be performed by an efficient administrative department of the executive branch of the government. When such a department is functioning honestly, fairly, without fear or favor, and in accordance with the law, the less it is interfered with the better.' "

In the present case, Mr. Anderson, the claimant, had been working at a wage scale of $1.63 an hour. In addition, he was receiving a ten-cent hourly bonus for working on the second shift. The pay rate for the new job offered him was $1.43 an hour. It would have afforded no opportunity for him to work on the second shift and consequently no chance to earn the extra ten-cent bonus. The commissioner held that under the circumstances, Anderson was entitled to unemployment benefits. His decision concluded as follows:

"In the light of the foregoing, the fact that the claimant would have incurred a wage loss of twenty cents an hour in his basic hourly rate by accepting work which apparently would not utilize his highest skills, and in the absence of

any showing in the record regarding local work opportunities in his customary occupation, it is concluded that the claimant refused the offered work with good cause."

Appellant testified that he would have accepted the new job had his pay not been cut, because "a person's got to live, I guess." Respondent emphasizes that the only question properly before us is whether a claimant can justify either his voluntary quitting, or his refusal to accept offered work solely on the ground that the offered work would have required him to accept a reduction in pay of twenty cents an hour. Accepting this as the issue before us, it seems proper to turn to the decisions of other jurisdictions, interpreting comparable legislation relative to the complementary Federal and state program of unemployment compensation.

The same general problem confronting us has come before the various state unemployment compensation agencies innumerable times, though in a great diversity of factual contexts. In the treatise contained in Vol. 1A of the CCH Unemployment Insurance Service, the following broad statement is made:

"A slight reduction in pay to a point not below the prevailing wage scale is not considered good cause for quitting but good cause is usually found when the reduction is great, drastic, or substantial." 1A CCH Unemployment Insurance Service 4656, par. 1975 (1950).

This observation is borne out by reference to the numerous decisions on the subject. Relatively few of these decisions have been rendered by courts of record because, quite properly, few of them have been appealed. In some states, such as Pennsylvania, agencies administering the law appear to take a strict view and are not inclined to allow benefits to an employee who has quit his job because of a reduction in his wages. But in other states, there have been decisions such as the following:

Mich. App. Bd. Dec., Dkt. B5-3683-2396, December 6, 1945, 4 CCH Unemployment Insurance Service 25,164, par. 1975.71 (1948):

"Where claimants received a 17¢ cut in wages without prior notification, and left for this reason, the Appeal Board

held 'that this cut in wages without notification constitutes good cause for claimant's voluntarily leaving', and that such cause was attributable to the employer."

N. J. Bd. of Rev. Dec., No. BR-35, 539, reported in 5 CCH Unemployment Insurance Service 33,074, par. 1975.02 (1950):

"An appreciable decrease in the amount of an individual's earnings, such as a reduction of *20%*, is good cause for leaving employment."

Ala. App. Trib. Dec. No. 2196, 2-1-44, reported in 1A CCH Unemployment Insurance Service 5050, par. 1975.03 (1949):

"Textile weaver who left her employment because her prior wage of 50¢ an hour had been reduced to 47½¢ because of lack of work and further to 40¢ an hour because of a yarn shortage was held to have quit voluntarily with good cause connected with her work."

R. I. App. No. 1640, February 5, 1942, reported in 6 CCH Unemployment Insurance Service 42,139, par. 1975.41 (1951):

"Claimant had been working at a standard wage rate plus a piece rate basis. When some learners were taken on claimant was obliged to spend some of his time teaching these learners and so his own earnings substantially decreased. He requested an adjustment but this was refused and he left. Held that leaving because of a substantial cut in pay is a good cause for leaving. In this case, while there was no cut in wage rates, nevertheless the change in working conditions resulted in a decrease in the claimant's weekly wage. He is therefore not required to suffer any disqualification for his leaving as he left with good cause."

This general view is not without support in the few appellate court cases which have dealt with the subject. In *Bunny's Waffle Shop, Inc. v. California Employment Commission*, 24 Cal. (2d) 735, 743, 151 P. (2d) 224, a group of employees left their employment upon receiving a twenty-five per cent reduction in wages. The court held that this did not amount to voluntary quitting without good cause, and upheld payment of unemployment compensation benefits, using the following language:

"The commission found that a twenty-five per cent wage cut imposed upon a single worker would give him good cause for leaving his work. A substantial reduction in earnings is generally regarded as good cause for leaving employment . . . [Citations of administrative decisions] and the commission acted properly in so holding in the present case. . . . [Citations of judicial opinions]"

Respondents are unable to distinguish this case except on the ground that the wage cut there involved was twenty-five per cent—a larger deduction, relatively speaking, than was involved in the case at bar. This suggests by implication that a twenty-five per cent cut in claimant's wages might have constituted good cause for his quitting, and might have justified the commissioner's decision that benefits should be paid to him. The same general reasoning seems to be adopted by the majority when it states, "It is undoubtedly true that an employee might be justified in voluntarily terminating his employment, if called upon to work for substantially reduced wages . . ." But, who is best qualified to determine where the line shall be drawn? An administrative agency which handles hundreds of cases of this kind, or an appellate court, confronted with only one? I am in entire agreement with the majority when it states that "each phase would be a matter of degree and the circumstances surrounding each case should certainly be considered by any authority called upon to determine whether or not the employee had good cause to leave his employment." However, it is my opinion that the proper authority to make the determination is the employment security department and not a reviewing court; and that the administrative decision should not be overturned merely because such a court may feel that an error in judgment has been made, but only if the action taken has been clearly arbitrary, capricious, or unreasonable. The commissioner's decision in the instant case seems to me quite sound, and fully consonant with contemporary economic realities. In the present inflationary period, when many families are living up to the limit of their incomes, a wage cut of twelve per cent or more may well be considered "substantial" and

quite sufficient to justify a worker in refusing to continue with his job. But in any event, the decision cannot be described as arbitrary or ·capricious. Comparable decisions from other states, both administrative and judicial, preclude the possibility of any such characterization. I think we should let it alone.

In conclusion: There is considerable controversy in the briefs as to whether this problem ought to be considered as a case falling under Rem. Supp. 1949, § 9998-211 (that is, one involving a possible disqualification for voluntarily quitting work); or as a case within the ambit of Rem. Supp. 1949, § 9998-214 (that is, one concerned with a possible disqualification for refusal to accept suitable offered work). It seems to me that the case could properly be classed under either or both of these sections of the statute. Since the commissioner by authority of Rem. Supp. 1945, § 9998-216, is authorized to consider exactly the same factors in determining whether a claimant should be disqualified under either of them, it would appear to be immaterial that in his opinion the case was one concerned with a refusal to accept suitable offered work. His reasoning applies even if the voluntary quit section of the statute controls, and consequently, should be upheld no matter which view is taken of the matter. See the concluding paragraphs of *Copper Range Co. v. Michigan Unemployment Compensation Commission,* 320 Mich. 460, 31 N. W. (2d) 692.

I dissent.