[No. 6418-9-II.   Division Two.   August 15, 1984.]

DONALD R. JOHNS, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*Michael E. Rowswell,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for respondent.

REED, J.—Dr. Donald R. Johns appeals from a trial court decision affirming the denial of unemployment benefits by the Department of Employment Security (Department). We affirm.

For approximately 16 years, Dr. Johns, a clinical psychologist, was employed in various capacities by the Department of Social and Health Services (DSHS). In 1978, while he was employed as a supervisor in the Adult Corrections Division (ACD), his wife became very ill and required home nursing care. To help Dr. Johns cope with this situation, his employer allowed him to work a flexible schedule and to perform a great many of his duties at home. Despite this arrangement, after several months his superiors began to question his ability both to carry out his job responsibilities and care for his wife. At about the same time, he also began to encounter some philosophical differences with the new Director of Adult Corrections.[1]

---

[1]Dr. Johns' brief describes those differences thusly:

After Mr. Tropp became director, a drastic change in the philosophy of corrections in this state occurred. Mr. Tropp had a tendency to over control and suppress rather than rehabilitate. He was opposed to resident government and placed emphasis on security and not rehabilitation. Dr. Johns believed that his change of philosophy would lead to violence, which it ultimately did in Walla Walla in 1979. Dr. Johns felt that the work he had been doing for many years was going down the drain and that he could not work in a situation and under

Because of these philosophical differences, Dr. Johns requested and was granted a transfer to the Mental Health Division of DSHS. He continued to receive his salary from the ACD. Even in his new position, however, he perceived that his superiors were dissatisfied with him and his work schedule. In addition, he was unhappy with his salary and attempted unsuccessfully to upgrade his position. In March of 1980, shortly after his wife died, Dr. Johns resigned and applied for unemployment benefits. In his application for benefits he gave as his "main reason" for quitting:

> Suitable employment on a permanent basis was not available in Div. of Mental Health. Return to Adult Corrections, where I had worked for 12 years, was unthinkable because of working conditions under present administration and with history of personal conflict with present Division Director. I cannot accommodate the span of responsibilities nor accept the level of pay for those duties and was unsuccessful in efforts to secure a more reasonable job in ACD.

In May of 1980 Dr. Johns' claim was denied on the basis that he had voluntarily left his employment without good cause.[2] He appealed to the Department's appeal tribunal.

The appeal examiner found that Dr. Johns' problems at work were attributable primarily to domestic strife and job

---

a director whose philosophy would potentially lead to further violence and upheaval. Under Mr. Tropp the prison system deteriorated to the point of having a very poor national reputation.

As is apparent from the record, Dr. Johns was not loath to criticize the new director's philosophy nor to reduce his complaints to writing in lengthy memoranda. These reactions are referred to by one of his superiors as "bad mouthing" the Department and its director.

[2]RCW 50.20.050 then stated in pertinent part:

"(1) An individual shall be disqualified from benefits . . . [if] he or she has left work voluntarily without good cause . . .

". . .

"(3) In determining whether an individual has left work voluntarily without good cause, the commissioner shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness, the individual's ability to perform the work, and such *other work connected factors* as the commissioner may deem pertinent, including state and national emergencies." (Italics ours.)

dissatisfaction and were not work–connected or work–related. The appeal examiner further found that he had failed to exhaust his reasonable employment alternatives prior to quitting. The Commissioner adopted the appeal examiner's findings and affirmed. The Superior Court affirmed the agency decision; thus, this appeal.

Under the Employment Security Act, the Commissioner's decisions are prima facie correct, and the burden of proving otherwise is on the person attacking the decision. RCW 50.32.150; *Schuffenhauer v. Department of Empl. Sec.,* 86 Wn.2d 233, 543 P.2d 343 (1975).

The purpose of unemployment benefits is to protect those who become unemployed through "no fault of their own." RCW 50.01.010; *Cowles Pub'g Co. v. Department of Empl. Sec.,* 15 Wn. App. 590, 593, 550 P.2d 712 (1976). In keeping with this policy, a claimant who becomes voluntarily unemployed must establish "good cause" by demonstrating that (1) the claimant left work *primarily* because of a work–connected factor of such a compelling nature that a reasonably prudent person would have left his or her employment, *and* (2) the claimant first exhausted all reasonable alternatives prior to termination. WAC 192–16–009(1).[3]

In essence, Dr. Johns' assignments of error challenge the Commissioner's factual findings that he failed to exhaust his reasonable employment alternatives and that domestic strife and job dissatisfaction rather than work–connected or work–related factors, caused his problems at work and led to his quitting.

█ Factual findings of the Department are reviewed under the administrative procedure act's "clearly erroneous" standard. RCW 34.04.130(6)(e); *Arima v. Department of Empl. Sec.,* 29 Wn. App. 344, 349, 628 P.2d 500 (1981). Dr. Johns does not contend the Board acted arbitrarily or capriciously. An administrative finding is "clearly erroneous" when, although there is supporting evidence, a review-

---

[3]Dr. Johns does not challenge the validity of WAC 192–16–009.

ing court considering the entire record, and the public policy of the legislation concerned, is left with a definite and firm conviction that a mistake has been made. *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). Our review of the entire record shows not only that substantial evidence supports these challenged findings but also provides us with no definite and firm conviction that the Department made a mistake in rendering them.

Dr. Johns argues that he quit for good cause because his philosophical differences with his supervisors, their dissatisfaction and lack of communication with him and his dissatisfaction with his responsibilities and salary, were work–connected factors that compelled him as a reasonably prudent person to leave his employment. He also contends that at the time he quit no reasonable employment alternatives were available to him. We disagree.

In *Cowles Pub'g Co. v. Department of Empl. Sec.,* 15 Wn. App. at 593, the court held that voluntary termination simply because of personal dissatisfaction with a work situation is the employee's fault and does not support a claim to unemployment benefits, saying that "the Act requires that the reason for unemployment be external and separate from the claimant." *See also Nolte v. Unemployment Comp. Bd. of Review,* 24 Pa. Commw. 541, 358 A.2d 114 (1976); *Citizens Bank v. Industrial Comm'n,* 428 S.W.2d 895 (Mo. Ct. App. 1968). In our view, the existence of mere philosophical differences with one's superiors rises to no higher stature. In sum, we agree with the Commissioner that such personal factors, which are entirely subjective to the claimant, are neither work–connected, as that term is used in the statute, nor are they sufficient in themselves to compel a reasonably prudent person to leave his employment. The Commissioner did not err.

The record simply does not sustain Dr. Johns' contention that the Commissioner's finding that he failed to exhaust his reasonable employment alternatives was clearly erroneous. Conflicting evidence was presented on the availability of suitable employment for him in the Mental Health Divi-

sion. He himself testified that he was employed in a suitable position in Mental Health. He believed he could continue there indefinitely, and could have dated his resignation at least 1 month later. Further, that Mental Health was reorganizing at the time and might accommodate another position. In addition, a letter summarizing a conversation between Dr. Johns and one of his supervisors just prior to the resignation indicates that, although a return to ACD was not deemed wise, his superiors in that department were still tolerant and supportive of his personal situation.[4] This supervisor suggested that Dr. Johns take some time off to get his health and attitude back and then resolve his employment dilemma. Instead of following this advice, however, the doctor resigned without further contacting either division. Considering this course of events as well as the doctor's own testimony, we cannot conclude the agency was mistaken in finding he did not fully exhaust his employment alternatives.

The Commissioner's ultimate conclusion that Dr. Johns had not established good cause for voluntarily leaving his employment was correct. The Superior Court's affirmance of the Department's denial of benefits is affirmed.

WORSWICK, A.C.J., and PETRIE, J., concur.

---

[4]The record also establishes that the State's merit system would not have countenanced a dismissal, even had this been the Department's decision. The hearing examiner so found.