Catherine G. GIBSON, Plaintiff,

v.

**BOARD OF REVIEW OF the INDUSTRI-AL COMMISSION OF UTAH, and Department of Employment Security, Defendants.**

No. 20501.

Supreme Court of Utah.

Oct. 1, 1985.

Reed M. Richards, Ogden, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendants.

PER CURIAM:

Catherine G. Gibson seeks judicial review of a decision by the Board of Review of the Industrial Commission of Utah which affirmed the decision of the administrative law judge finding her ineligible for unemployment benefits pursuant to section 35–4–5(a) of the Utah Employment Security Act on the ground that she voluntarily quit work without good cause. We affirm.

Gibson had been employed by the I.R.S. since September 1, 1978, when she was assigned to work in the audit division of the Ogden service center in April 1984. Prior to that assignment, she had worked as a tax auditor and was "basically happy." Her duties in the new job included the review of computer-selected tax returns to determine whether or not returns should be audited. Under I.R.S. guidelines, tax returns were not selected for auditing purposes unless the audit was cost effective. Gibson felt that as a result, middle and lower income taxpayers were singled out, while high income taxpayers were passed over for audit. This attacked her sense of justice and integrity. She developed stress-related physical symptoms which her physician attributed to her work. Gibson looked for other work, but quit in October

without having found another job. The record indicates that Gibson did not request an interdepartmental transfer because she considered it futile and could no longer work for the I.R.S.

Gibson applied for unemployment compensation and cited employment-related stress and medical problems as reasons for quitting. In evaluating her application, a representative of the Department of Employment Security concluded that Gibson's "basis for leaving is a philosophical difference as to audit selection—allowing powerful persons to escape audit. Feelings were that injustice was being done." In his decision after a hearing, the administrative law judge acknowledged Gibson's frustrations in dealing with the bureaucratic system, but denied her employment compensation on the ground that her situation was not so compelling as to leave her no alternative but to quit. The Board of Review adopted those findings.

▮ In voluntarily leaving the work force, Gibson must establish "good cause" in order to qualify for unemployment compensation. The definition of good cause requires the application of a legal question to the fact situation at issue. On questions of mixed law and fact, we will not substitute our judgment for that of the Board of Review so long as its interpretation has warrant in the record and a reasonable basis in the law. *Salt Lake City Corp. v. Department of Employment Security*, Utah, 657 P.2d 1312 (1982). Rule A71–07–1:5(I)(B)(1)(a) and (b) of the Rules of the Department of Employment Security defines good cause as follows:

1. Good cause is established if continuance of the employment would have had an adverse effect on the claimant which could not be controlled or prevented and necessitated immediate severance of the employment relationship, or if the work was illegal, or unsuitable new work. . . .
a. *Adverse Effect on the Claimant.* The separation must have been motivated by circumstances which made continuance of the employment a hardship or matter of real concern sufficiently ad-

verse to a reasonable person to outweigh the benefits of remaining employed. There must be a showing of actual or potential physical, mental, economic, personal or professional harm caused or aggravated by continuance in the employment. The claimant's reason(s) for belief in the consequences of remaining on the job must be real, not imaginary; substantial, not trifling. These circumstances must be applied as to the average individual, not the supersensitive.
b. *Ability to Control or Prevent.* Even though there is evidence of an adverse effect on the claimant good cause is not established if the claimant:
(1) reasonably could have continued working while looking for other employment, or
(2) had reasonable alternatives that would have made it possible for him to preserve his job through approved leave, transfer, or adjustment to personal circumstances, etc. or,
(3) had not given the employer notice of the circumstances causing the hardship so the employer would have an opportunity to make adjustments which would alleviate the need to quit.

This Court has defined good cause as one to similarly affect persons of reasonable and normal sensitivity and one that is limited to those instances where the unemployment is caused by *external pressures so compelling* that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances. *Child v. Board of Review*, Utah, 657 P.2d 1375 (1983); *Denby v. Board of Review*, Utah, 567 P.2d 626 (1977). Good cause was found not to be present in *Swiecicki v. Department of Employment Security*, Utah, 667 P.2d 28 (1983), where an air traffic controller was torn by indecision and conflicting loyalties when he failed to report to work during the nationwide air traffic controller strike in 1981. Gibson's reliance on *Box · Elder County v. Industrial Commission*, Utah, 632 P.2d 839 (1981), and *Deiss v. Unemployment Compensation Board of Re-*

*view,* 475 Pa. 547, 381 A.2d 132 (1977), is misplaced. In *Box Elder County,* the claimant was harassed by the tax auditor who had opposed him in a political campaign. External pressures caused his angina and subsequent termination of work. In *Deiss,* the claimant suffered from a character disorder. His psychotherapist testified that after working with the claimant for one year it was his opinion that further work on the assembly line would result in a nervous breakdown of his patient. The court found that situation to be of a "necessitous and compelling nature" (language replacing good cause in the Pennsylvania statute) and reversed the denial of unemployment benefits.

 In her reply brief Gibson for the first time claims that she had to undergo an operation directly related to her job stress in June of 1984. Gibson did not adduce evidence of such compelling nature at the hearing or at any other juncture of the proceedings below. She was admonished by the administrative law judge to give all testimony pertinent to her claim since she would not be afforded a future opportunity to give verbal testimony. There is no mention of an operation in her two letters to the appeals section and the Board of Review. We must therefore decline to consider that information in our decision. Issues not raised before the administrative agency are waived on appeal. *Pease v. Industrial Commission,* Utah, 694 P.2d 613 (1984).

 The case here is akin to *Johns v. Employment Security Department,* 38 Wash.App. 566, 686 P.2d 517 (1984). Dr. Johns had voluntarily terminated his employment because of philosophical differences with his supervisor who had initiated drastic changes in the corrections system of the state of Washington which Dr. Johns feared would, and ultimately did, result in violence. Nonetheless, the *Johns* court reaffirmed a previous decision where the court had held that

> voluntary termination simply because of personal dissatisfaction with a work situation is the employee's fault and does not

support a claim to unemployment benefits, saying that "the act requires that the reason for unemployment be external and separate from the claimant."

*Id.* 686 P.2d at 520. That definition is concordant with the holdings in *Child, Denby,* and *Swiecicki, supra.* Therefore, we do not find that the board erred in finding and concluding that Gibson lacked good cause for quitting.

In denying Gibson relief, the Board of Review was cognizant of her assertion that the stress of her dissatisfaction with the I.R.S. policy caused her concerns for her health, as evidenced by her doctor's certification. The board found, however, that in order for good cause to exist a claimant with grievances must show that she made some effort to give the employer the opportunity to work out whatever problem led to the grievances. *See Chapman v. Industrial Commission,* Utah, 700 P.2d 1099 (1985). Gibson's reason for not following that procedure was that she was offended by I.R.S. policies as a whole and could not continue working within the system. Because she had claimed to have been basically happy with her previous assignment, the board found that she failed to show that a transfer to other work duties would not have resolved the job-related stress and therefore failed to establish good cause for voluntarily leaving her work. Those findings are supported by record evidence and are reasonably based in the law. The Board of Review's affirmance of the administrative law judge's ruling is affirmed.

HOWE, J., dissents.