[No. 8599-2-II. Division Two. February 10, 1987.]

GENEVIEVE N. RODEEN, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

---

*Glenn D. Abraham, Jr.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for respondent.

PETRICH, J.—Genevieve Rodeen appeals a decision of the Commissioner of the Department of Employment Security which declares her ineligible for unemployment compensation benefits.

The issue on appeal is whether Rodeen quit her job for "good cause" so as to qualify her for unemployment compensation benefits under RCW 50.20.050.

We affirm, holding that Rodeen voluntarily quit her job without good cause thus disqualifying her for unemploy-

ment compensation benefits under the statute.

On February 7, 1983, the Port Townsend voters passed a bond issue to renovate the Port Townsend public schools, including the Port Townsend High School cafeteria. Rodeen had been employed as a cook/baker to prepare hot lunches in the cafeteria for almost 20 years. She customarily worked from September to June, 6 hours a day, 5 days a week. At the time she quit her job she was receiving $7.89 per hour.

The renovation of the cafeteria was scheduled to begin on January 2, 1984, and to continue until summer of that same year. During that time, the kitchen crew was to distribute pre–prepared lunches to students. School officials anticipated that preparing and distributing the pre–prepared lunches would take less employee time than the former hot lunch program and that there would be no need for a cook/baker. On October 19, 1983, Rodeen was informed that during the renovation period: (1) her workday would be reduced from 6 to 3½ hours; (2) she would perform the duties of a kitchen aide; and (3) she would receive the scale wages of a kitchen aide, $6.35 per hour. This reduction in hours and wages had no effect on her retirement.

Rodeen voiced her dissatisfaction with the proposed plan. After several meetings with her supervisor to discuss the reasons for the reduction in hours and wages and to explore alternative arrangements, Rodeen was still unhappy with the situation and resigned as of January 1, 1984. She had no other work prospects at that time.

Rodeen then applied for unemployment compensation benefits. The Department of Employment Security determined that she had had good cause to quit her job and granted the benefits. The School District appealed to the Commissioner of the Department of Employment Security. The Commissioner, contrary to the decision of the administrative law judge, found that Rodeen had quit her job without good cause and concluded she was not eligible for unemployment benefits pursuant to RCW 50.20.050. The

Superior Court affirmed the Commissioner's ruling.

In resolving the issue on appeal we are guided by the principles announced in an earlier opinion of this court in which we said:

> Under the Employment Security Act, the Commissioner's decisions are prima facie correct, and the burden of proving otherwise is on the person attacking the decision.
> The purpose of unemployment benefits is to protect those who become unemployed through "no fault of their own." RCW 50.01.010. In keeping with this policy, a claimant who becomes voluntarily unemployed must establish "good cause" by demonstrating that (1) the claimant left work *primarily* because of a work–connected factor of such a compelling nature that a reasonably prudent person would have left his or her employment, *and* (2) the claimant first exhausted all reasonable alternatives prior to termination. WAC 192–16–009(1).

(Footnote and citations omitted.) *Johns v. Department of Empl. Sec.*, 38 Wn. App. 566, 569, 686 P.2d 517 (1984).

The two components of "good cause" constitute findings of fact reviewable under the "clearly erroneous" standard of the administrative procedure act. *Johns v. Department of Empl. Sec.*, 38 Wn. App. at 569, citing RCW 34.04.130(6)(e); *Arima v. Department of Empl. Sec.*, 29 Wn. App. 344, 349, 628 P.2d 500 (1981).

"An administrative finding is 'clearly erroneous' when, although there is supporting evidence, a reviewing court considering the entire record, and the public policy of the legislation concerned, is left with a definite and firm conviction that a mistake has been made." *Johns,* 38 Wn. App. at 569–70.

There is substantial evidence supporting the Commissioner's findings. But of more importance, considering the public policy of the legislation we are considering here, we do not have a definite and firm conviction the Commissioner made a mistake in rendering them.

Here, Rodeen argues that she quit for good cause because she was confronted with accepting a greater than 20 percent

loss in wages, a reduction in hours and a lower ranking job for at least a 6–month period. We disagree.

Two Washington cases discuss when quitting due to a pay reduction constitutes quitting for "good cause" to thereby qualify for unemployment benefits. The first case is *In re Anderson*, 39 Wn.2d 356, 235 P.2d 303 (1951). In *Anderson*, the court stated:

> It is undoubtedly true that an employee might be justified in voluntarily terminating his employment, if called upon to work for substantially reduced wages or under less favorable conditions; but each phase would be a matter of degree, and the circumstances surrounding each case should certainly be considered by any authority called upon to determine whether or not the employee had good cause to leave his employment.
>
> An employee might well be justified in terminating his employment, if transferred from available work to work of a substantially different nature, or even of the same nature but paying a lower wage or requiring work under less favorable conditions.
>
> *On the other hand, a different situation would be presented if the employer no longer had occasion to use the employee in the work he had formerly performed, either permanently or temporarily, but could continue the employment in some lesser but related capacity.*

(Italics ours.) *Anderson*, 39 Wn.2d at 361–62. The second case is *Grier v. Department of Empl. Sec.*, 43 Wn. App. 92, 715 P.2d 534, *review denied*, 106 Wn.2d 1003 (1986), which cites *Anderson* with approval.

Here, Rodeen suffered a substantial pay cut which, as described above, could justify terminating a job in some circumstances. However, Rodeen's pay reduction was temporary. The School District planned to reinstate her to her old position and wage upon completion of the renovation. Moreover, the hours reduction did not have a detrimental effect on her retirement and she had no other work prospects when she quit. Finally, she was given the new position because her former position had been temporarily eliminated. Therefore, pursuant to *Anderson,* we cannot say "with a definite and firm conviction that a mistake has

been made." *See Johns v. Department of Empl. Sec.,* 38 Wn. App. at 570.[1]

Affirm.

ALEXANDER, A.C.J., and WORSWICK, J., concur.

---

[1]Rodeen in her brief argues that the Commissioner applied an erroneous standard in reversing the decision of the administrative law judge. She argues that he based his decision on the assumed premise that "in no way has [Rodeen] bettered her position by voluntarily leaving." The Commissioner's statement that she "in no way bettered her position" is merely superfluous. Moreover, the record shows that he did apply the proper standard—that none of the work–connected factors here "were of such a compelling nature as to cause a reasonably prudent person in similar circumstances to voluntarily leave employment."