[No. 36124-4-I.    Division One.    July 22, 1996.]

SHIRLEY J. TERRY, *Appellant*, v. THE EMPLOYMENT
SECURITY DEPARTMENT, ET AL., *Respondents*.

746

*Brian C. Dale* and *Deno, Millikan & Dale*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Christine J. Kilduff, Assistant*, for respondent Employment Security Department.

*Timothy J. O'Connell*, for respondent GTE Northwest, Inc.

GROSSE, J. — GTE Northwest, Inc. (GTE), notified Shirley J. Terry that it was eliminating her position and she needed to exercise her collective bargaining rights to "bump" a less senior employee, move to an existing vacancy, or the company would lay her off. Instead, Terry decided to accept the company's early retirement offer. The Commissioner of the Employment Security Department of the State of Washington (the commissioner) denied her unemployment benefits, concluding she did not have good cause to quit as required by the Employment Security Act because she chose early retirement for

personal reasons, rather than seeking to remain employed at the company. We reverse and remand for a determination of whether Terry acted reasonably by leaving when faced with a reduction in her wages.

## FACTS

Terry worked at GTE for almost 26 years, January 1968 through May 1993. On May 10, 1993, GTE notified Terry by letter that she had been "identified as an employee to be laid off" as part of a "pending reduction in force." As part of this reduction in force, GTE was laying off employees and consolidating positions, targeting "older higher salaried or waged employees." GTE told Terry that she had "between May 14, 1993 and May 28, 1993 to exercise [her labor agreement] rights to bump a less senior employee or [to] an existing vacancy for which you are qualified."

As part of its company-wide effort to reduce its work force, GTE offered its employees early retirement as an incentive to induce them to quit voluntarily. GTE described the financial options under the early retirement program "as being far superior to any financial package attaching to a job separation after the [deadline] dates." The deadline to accept the early retirement offer was mid-May.

On May 26, 1993, the 55-year-old Terry elected to accept GTE's offer of early retirement with enhanced benefits. Terry did not try to exercise her seniority based "bumping rights." The Department of Employment Security concedes, and GTE does not refute, that there was not a position at her skill and pay level that Terry could bump into. Terry also did not try to bid on another potentially available position. Terry's position of test technician was merged with another less skilled position, repair technician, to create a new job, customer care technician. In order to obtain the new job, Terry needed to interview and test for it and would not "automatically get to move right into the job."

At her hearing, Terry explained that she did not test for the new position (which entailed some of the same work) because she would not be paid as much, going from $16.72 per hour to $13.99 per hour in the new position. Terry did not want to "mess up her retirement" with the downgrade in pay. Given what she heard about "jobs moving," Terry decided to opt for the retirement plan because of its benefits, reasoning that "between being laid off and taking the early out, at fifty-five, . . . you have to think of the future, when you're getting that close to Social Security, and that was a lot of my decision, because of the medical—it was paid—in the early out. The medical is what made my decision after the layoff letter."

The commissioner denied her unemployment benefits, determining that she quit voluntarily. The Office of Administrative Hearings conducted a consolidated hearing for five GTE employees and decided in Terry's favor, concluding that she quit voluntarily with good cause. The commissioner reversed, modifying the administrative law judge's findings and concluding that Terry did not qualify for benefits because she quit without good cause. The superior court affirmed. Terry appeals.

## ANALYSIS

██ In reviewing a final administrative decision of the Employment Security Department, we examine the findings and conclusions of the commissioner.[1] To determine if the commissioner erred by determining that Terry voluntarily quit without good cause, we apply the mixed question of law and fact standard.[2] We review factual questions under the substantial evidence standard and review de novo questions of law and the application of the law to

---

[1]*Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 406, 858 P.2d 494 (1993) (holding that it is the commissioner's findings of fact, to the extent they modify or replace the administrative law judge's findings that are relevant on appeal).

[2]*Sweitzer v. Department of Empl. Sec.,* 43 Wn. App. 511, 515, 718 P.2d 3 (1986). *Cf. Tapper,* 122 Wn.2d at 402-03.

the facts.[3] Under the "substantial evidence" standard, we grant relief if the order is "not supported by evidence that is substantial when viewed in light of the whole record before the court."[4] If the "agency has erroneously interpreted or applied the law," we overturn its decision.[5] The commissioner's decision is prima facie correct, and Terry carries the burden to establish her right to benefits.[6]

■ The Employment Security Act provides unemployment benefits to help those who have become unemployed through no fault of their own.[7] "Generally, unemployed workers are eligible for benefits unless they are disqualified by statute."[8] Under RCW 50.20.050(1), a worker may be disqualified from receiving unemployment benefits if the commissioner determines he or she voluntarily leaves work without good cause. In making this determination:

> [T]he commissioner shall only consider work-connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies.[9]

Under the commissioner's interpretation of RCW

---

[3]*Tapper*, 122 Wn.2d at 403.

[4]RCW 34.05.570(3)(e).

[5]RCW 34.05.570(3)(d); *Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 773, 822 P.2d 791 (1992).

[6]RCW 50.32.150. *See In re Townsend*, 54 Wn.2d 532, 534, 341 P.2d 877 (1959).

[7]RCW 50.01.010; *Lawter v. Employment Sec. Dep't*, 73 Wn. App. 327, 331, 869 P.2d 102, *review denied*, 124 Wn.2d 1019 (1994).

[8]*Lawter*, 73 Wn. App. at 331 (citing *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 389, 687 P.2d 195 (1984)).

[9]RCW 50.20.050(3). Additionally, under RCW 50.20.050(3), good cause is not established if the employee leaves work because of a

> significant work factor which was generally known and present at the time he or she accepted employment, unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circum-

50.20.050(3), the employee must satisfy three factors to establish good cause: (1) that the employee left because of work-connected factors; (2) that the factors were sufficiently compelling to cause a reasonably prudent person to terminate employment; and (3) that the employee exhausted all reasonable alternatives (but the employee need not perform futile acts).[10]

■■ The commissioner concluded that Terry "quit to retire" and that this was a "personal, rather than a work-connected reason for quitting." The commissioner also found there was no showing that her employment would not have continued albeit at a different rate of pay in a different position. We hold that the commissioner erred by concluding that the decision to retire was automatically a personal decision. The commissioner should have considered whether Terry quit for sufficient work-related factors required under WAC 192-16-009.

WAC 192-16-009(1)(a) requires an employee to demonstrate "[t]hat he or she left work primarily because of a work connected factor(s)." The presence of personal reasons for leaving employment does not preclude the employee from claiming benefits, however, the employee must have left work "primarily" for work-related reasons.[11]

Although Terry quit for some personal reasons, the record reveals substantial objective work-connected factors that could motivate Terry to leave. GTE notified her by letter that she needed to find other work in the company or she would be laid off. Moreover, GTE does not dispute that it consolidated her job with another job and decreased

stances would work an unreasonable hardship on the individual were he or she required to continue in the employment.

[10] WAC 192-16-009; *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 80-81, 795 P.2d 1184 (1990), *review denied*, 116 Wn.2d 1005 (1991).

[11]*See Davis v. Department of Empl. Sec.*, 108 Wn.2d 272, 276-77, 737 P.2d 1262 (1987) (good cause not established when employee quit to move to another location: "Only where a compelling personal reason to quit is somehow work connected might the good cause exception apply."); *Johns v. Department of Empl. Sec.*, 38 Wn. App. 566, 570, 686 P.2d 517 (1984). *See also Safeco Ins. Cos.*, 102 Wn.2d at 392.

the pay rates for the newly merged position. There were no positions she could bump into at her level of seniority and pay. These are work-related factors. A reduction in wages or a forced change in job responsibilities are work-connected factors because they are conditions caused by the employer.[12]

Terry must also demonstrate under WAC 192-16-009(1)(b)--(c) that the work-related factors were of such a compelling nature that a reasonably prudent person would leave his or her employment and that she exhausted all reasonable alternatives prior to termination. A compelling reason is one that "forces or constrains a person to quit her employment against her will."[13] Good cause must be based upon existing facts as contrasted to conjecture, and reasons for leaving employment must be significant. Thus, mere uncertainty about an employment situation is not good cause to quit.[14] An individual may be excused from exhausting alternatives if the alternatives would be futile.[15]

Terry believed at the time that she would be faced with a pay cut of approximately $3 an hour. A substantial reduction in pay has long been considered a compelling

---

[12]*Cf., Forsman v. Employment Sec. Dep't*, 59 Wn. App. at 81.

[13]*Cowles Pub'g Co. v. Department of Empl. Sec.*, 15 Wn. App. 590, 593, 550 P.2d 712 (1976), *review denied*, 88 Wn.2d 1001 (1977). *See also Matison v. Hutt*, 85 Wn.2d 836, 837, 539 P.2d 852 (1975) (losing health and pension benefits sufficiently compelling reasons for restaurant workers to quit).

[14]*Anheuser Busch, Inc., v. Goewert*, 82 Wn. App. 753 (when the employer is not involuntarily terminating employee, uncertainty about future employment is personal reason for quitting). *See Korte v. Department of Empl. Sec.*, 47 Wn. App. 296, 302, 734 P.2d 939 (1987) (conjectural that there would be a substantial deterioration of work conditions under new contract). *See also Read v. Employment Sec. Dep't*, 62 Wn. App. 227, 235, 813 P.2d 1262 (1991) (apprehension of layoff is not substantial evidence of actual risk of layoff); *Wallace v. Department of Empl. Sec.*, 51 Wn. App. 787, 793-94, 755 P.2d 815 (1988) (one week insufficient time to evaluate job); *Rodeen v. Department of Empl. Sec.*, 47 Wn. App. 60, 64, 733 P.2d 544 (1987) (temporary reduction in wages and hours not enough to show good cause).

[15]WAC 192-16-009(1)(c); *Sweitzer v. Department of Empl. Sec.*, 43 Wn. App. at 516-17.

reason for terminating one's employment.[16] The court in *In re Anderson*, observed: "An employee might well be justified in terminating his [or her] employment, if transferred from available work to work of a substantially different nature, or even of the same nature but paying a lower wage or requiring work under less favorable conditions."[17] If the reduction in pay was substantial, then Terry would be excused from testing for the new position on the grounds that it would be futile.[18] Because we do not try facts de novo on review,[19] we cannot determine from this record whether Terry's potential pay cut was substantial and whether Terry acted reasonably in declining to test for the new job. The Department argues the reduction was not significant, comparing it to other cases that had higher reductions.[20] We decline to set a particular amount that constitutes a substantial reduction; this is a question for the trier of fact to determine, examining the totality of the circumstances.[21] Because the commissioner did not consider whether Terry acted reasonably by leaving when faced with a reduction in pay and whether exhausting her

[16]*Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76 (wage reduction of 24 percent, coupled with 45 percent reduction in hours compelling reason to quit); *Grier v. Department of Empl. Sec.*, 43 Wn. App. 92, 715 P.2d 534 (33 percent reduction in hours at $3.75 per hour compelling reason to quit), *review denied*, 106 Wn.2d 1003 (1986).

[17]*In re Anderson*, 39 Wn.2d 356, 361-62, 235 P.2d 303 (1951) (a 20 percent per hour reduction in pay and a loss of opportunity to be placed on another shift at a $.10 per hour increase is not sufficient to establish good cause for voluntary unemployment).

[18]WAC 192-16-009(1)(c). *Forsman*, 59 Wn. App. at 82-84; *Sweitzer*, 43 Wn. App. at 517.

[19]*Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988).

[20]*E.g., Forsman*, 59 Wn. App. at 82 (24 percent reduction enough); *Grier*, 43 Wn. App. at 96 (33 percent reduction enough); *Rodeen v. Department of Empl. Sec.*, 47 Wn. App. 60, 62, 733 P.2d 544 (1987) (20 percent reduction not enough).

[21]*G&G Elec. & Plumbing Dist. v. Employment Sec. Dep't*, 58 Wn. App. 410, 411-12, 793 P.2d 987 (1990) (employer's failure to pay an annual bonus, withholding of sick leave benefits, and causing work-related stress that led to health problems were an accumulation of factors that would impel a reasonably prudent person to quit a job), *review denied*, 115 Wn.2d 1023 (1990). *See Anderson*, 39 Wn.2d at 361.

alternatives by testing would have been futile, we remand for a new hearing.[22]

Terry requests attorney fees. RCW 50.32.160 provides that if this court overturns or modifies the commissioner's ruling, the claimant is entitled to reasonable attorney fees.[23] Accordingly, Terry is entitled to attorney fees upon timely filing an affidavit of attorney fees with this court.[24]

AGID and ELLINGTON, JJ., concur.

_____

[22]We do not consider whether WAC 192-16-070, which defines when a voluntary layoff will be a layoff for lack of work, is applicable because Terry was laid off from her job before the regulation's effective date.

[23]*Abulhosn v. Department of Empl. Sec.*, 106 Wn.2d 486, 492, 722 P.2d 1306 (1986).

[24]RAP 18.1.