**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| NGUYET T. TANG, | No. 67666-1-I |
| Appellant, | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF EMPLOYMENT SECURITY, | UNPUBLISHED |
| | FILED: March 11, 2013 |
| Respondent. | |

2013 MAR 11 AM 11:54
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

Cox, J. — Nguyet Tang, former employee of Lexus of Bellevue, appeals the decision of the Commissioner of the Employment Security Department denying her unemployment benefits. She claims that certain findings of fact in the decision are not supported by either substantial or admissible evidence. We disagree and affirm.

Tang worked as a finance and leasing consultant, earning commissions by preparing financial documents and selling certain products to customers purchasing cars. On July 28, 2010, Tang spent several hours, including two hours after her shift, preparing documents for a customer, to whom she also sold a dealership warranty for $3,800. The next morning, before Tang's shift, the customer returned to the dealership dissatisfied with the purchase. The sales

manager, Nick Wilcox, agreed to "unwind" the sale and allow the customer to purchase a different car which was covered by a factory warranty. Wilcox assigned a different finance consultant, who was then at work and who sold other additional products to the customer.

When Tang learned that the other finance consultant would receive the commission, she complained repeatedly to General Manager Mark Babcock. Babcock refused to credit the sale to her. Tang did not appear for her shift on July 30. Babcock sent Tang an email saying he would process her termination if she did not come to work the next day. Tang did not appear for her scheduled shifts on July 31 or August 1. On August 2, Babcock terminated Tang for job abandonment.

Thereafter, Tang applied for unemployment insurance benefits. Following investigation, the Employment Security Department (Department) denied Tang's request.

Tang sought review of the Department's decision. An administrative law judge (ALJ) affirmed the decision denying Tang benefits, concluding that Tang voluntarily quit her job without good cause as defined by RCW 50.20.050(2)(b). The ALJ also concluded that Tang was able to, available for, and actively seeking work during the weeks at issue, as required by RCW 50.20.010(1)(c).

Tang sought review of the ALJ's decision. The Commissioner adopted all but one of the ALJ's findings of fact with modifications and adopted all but one of the conclusions of law. The Commissioner concluded that Tang quit her job without good cause. The Commissioner concluded that Tang's compliance with

2

RCW 50.20.010(1)(c), which requires one to actually seek work, warranted further consideration. Accordingly, the Commissioner remanded that issue to the Department for further consideration and determination.

Tang appealed the Commissioner's decision. The King County Superior Court affirmed.

Tang appeals.

## Good Cause

Tang first contends that the record does not support the Commissioner's determination that she quit her job without good cause. Instead, she claims the evidence established that she had good cause to separate based on continuing unchecked discrimination. We disagree.

Judicial review of a decision made by an Employment Security Department commissioner is governed by the Washington Administrative Procedure Act (WAPA).[1] In reviewing the decision, we apply the standards of the WAPA directly to the administrative record before the agency.[2] Relief from an agency decision is granted when the agency has erroneously interpreted or applied the law, the order is not supported by substantial evidence, or it is arbitrary or capricious.[3]

A person who voluntarily leaves work without good cause is disqualified from unemployment insurance benefits.[4] But a person who voluntarily leaves

---

[1] Tapper v. Empl. Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).
[2] Id.
[3] RCW 34.05.570(3)(d),(e), (i).
[4] RCW 50.20.050(2)(a).

3

work for good cause is not disqualified from benefits.[5] One circumstance constituting good cause exists if the "individual left work because of illegal activities in the individual's worksite, the individual reported such activities to the employer, and the employer failed to end such activities within a reasonable period of time."[6] Whether a claimant leaves employment for good cause is a mixed question of law and fact.[7]

We review findings of fact to determine whether they are supported by substantial evidence.[8] To the extent the commissioner modifies or replaces findings by an administrative law judge, we review the commissioner's findings.[9] Using this approach, we give the agency's factual findings the proper level of deference to which they are entitled under the circumstances.[10] Unchallenged findings are verities on appeal.[11]

The application of law to the facts is a question of law that we review de novo.[12]

We consider a commissioner's decision to be prima facie correct.[13] The party challenging the agency's action bears the burden of demonstrating its invalidity.[14]

---

[5] RCW 50.20.050(2)(b).
[6] RCW 50.20.050(2)(b)(ix).
[7] Terry v. Empl. Sec. Dep't, 82 Wn. App. 745, 748, 919 P.2d 111 (1996).
[8] Barker v. Empl. Sec. Dep't, 127 Wn. App. 588, 592, 112 P.3d 536 (2005).
[9] Tapper, 122 Wn.2d at 406.
[10] Id. at 403.
[11] Fuller v. Empl. Sec. Dep't, 52 Wn. App. 603, 606, 762 P.2d 367 (1988).
[12] Terry, 82 Wn. App. at 748-49.
[13] RCW 50.32.150.
[14] RCW 50.32.150; RCW 34.05.570(1)(a).

4

Tang challenges the Commissioner's modified findings Nos. 3 through 13, which state in relevant part:

> As more fully set forth in the November 8, 2010 Initial Order, evidence of record establishes as follows: Over the course of the four year employment relationship, one of the employer's sales managers (Mr. Wilcox) made disparaging comments regarding people of various ethnicities, including Asians. The claimant is Asian and was offended. The claimant complained to the employer's general manager (Mr. Babcock), and he intervened, but Mr. Wilcox continued to make comments. The employer does not condone discrimination or work-related harassment. Approximately 165-170 employees work at the employer's Bellevue dealership. 40-50 of those employees are Asian-Americans. 50 percent of the dealership's employees are women. The employer's human resources director (Ms. Hunt) is Asian-American. Although Ms. Hunt's office is at the claimant's workplace, and Ms. Hunt was readily accessible to employees (including the claimant), the claimant did not report her complaints regarding Mr. Wilcox to Ms. Hunt.
>
> . . .
>
> The job separation was premised on a commission-related disagreement.
>
> . . .
>
> [T]he claimant was upset because she . . . believed she had earned and should have received the commission. The claimant faulted Mr. Wilcox and complained to the general manager (Mr. Babcock), but Mr. Babcock determined Mr. Wilcox had complied with procedure regarding the sales and commissions. On July 30, 2010, the claimant was scheduled to work but was a no call/no show. Via email correspondence, the claimant was cautioned that her services were essential and that her absence burdened her coworkers. The claimant was further cautioned that, if she did not return to work the following day, the employer would consider the employment relationship terminated. The following day (July 31), the claimant did not return to work. But for her belief that she had been unfairly denied a commission, the claimant would have reported for work. She attributed her decision to a "matter of principle."[15]

Tang first claims that the Commissioner discounted substantial evidence that she was subjected to a racially hostile work environment and that the

---

[15] Clerk's Papers at 7-9.

circumstances of the July 28-29 car deal was the "straw that broke the camel's back."[16] To support this claim, Tang provides bare citations to her petitions for review to the Commissioner and the superior court as well as her testimony before the administrative law judge without any explanation or argument. Tang also argues that substantial evidence does not support the specific finding: "The employer does not condone discrimination or work-related harassment." We disagree.

The findings reflect that the Commissioner considered Tang's testimony that Wilcox made offensive racial comments during the four years of her employment, and continued to do so even after she complained and Babcock intervened. The Commissioner also considered Tang's admissions that she did not report the racial comments to the human resources director and that she would have returned to work in the last days of July if Babcock had given her the disputed commission.

Babcock testified that the disputed commission was allocated in accordance with consistent company policy, describing his preference to serve the complaining customer with the personnel present at the time of the replacement sale and to allocate the commission to the person who sold the replacement product. Babcock also testified:

> [W]e are very, very conscientious of any kind of threatening workplace. We have a very diverse workplace. We have controls in place and checks and balances. We have ways for people to go above anybody in the company and report such claims, and we

---

[16] Brief of Appellant at 13.

take it very serious. So we obviously very much disagree with her statements of a threatening workplace.[17]

We conclude that substantial evidence supports the challenged statement regarding the employer's view of workplace discrimination or harassment. And the Commissioner was entitled to decide from this and other evidence whether a discriminatory or retaliatory animus played a role in the allocation of the disputed commission and whether the reported racial comments contributed to Tang's decision not to return to work. Mere disagreement with the Commissioner's view of the evidence does not show a lack of substantial evidence to support the challenged findings. Because Tang does not challenge any of the Commissioner's conclusions of law or present any additional argument establishing any error in the conclusions, she is not entitled to relief.

## Actively Seeking Work

Tang next assigns error to the Commissioner's finding No. 2, arguing that it is not supported by admissible evidence. Without citation to authority, Tang claims that the Commissioner could not properly consider Babcock's closing statement as a basis to remand the issue for further proceedings. We disagree.

During cross-examination at the hearing before the ALJ, Tang admitted that she had not applied for any finance positions at any car dealerships since leaving her job. At the end of the hearing, the ALJ asked Tang for her "final statement," saying, "And this isn't testimony, anything you say in your final

---

[17] Certified Agency Record at 60.

closing I'm not going to consider as evidence."[18] When the ALJ asked Babcock

for a final statement, he replied:

> We disagree with [Tang's] claims, obviously. If there were any truth to, you know, a hostile work environment or, you know, even that she disagrees with our policy on, you know, one car deal, my question would be why has she not applied for a finance job at any other car dealership?
>
> It's our opinion that she planned on leaving and was working towards that many weeks before she actually – and then she has a reason to want to collect these benefits. And in this marketplace she could go work yet this afternoon in an S and I position anywhere in this city. And, you know, so our position is that this is fabricated and we think the benefits should be denied.[19]

In Finding of Fact No.2, the ALJ found, "During the weeks at issue the

claimant was willing and able to accept any offer of suitable work and sought

work as directed by the Department."[20] In Conclusion of Law No. 7, the ALJ

concluded:

> RCW 50.20.010(1)(c) requires each claimant to be able to, available for, and actively seeking work. The claimant was able to, available for, and actively seeking work during the weeks at issue and is therefore not subject to denial under the above-cited statute and related laws and regulations as it pertains to that issue.[21]

The Commissioner did not adopt the ALJ's finding No. 2, finding instead

as follows:

> Prior to her four year tenure with the interested employer, the claimant was employed for approximately three years by another dealership and performed a finance-related job. Thus, the claimant's most recent seven years of work experience is limited to

---

[18] Id. at 66.
[19] Id. at 69.
[20] Id. at 100.
[21] Id. at 102-03.

auto-finance. The claimant has not applied for positions in the auto-finance industry, which the claimant attributes to lack of employment opportunities. However, the employer's general manager testified that there are numerous employment opportunities consistent with the claimant's experience in the claimant's labor market area.[22]

The Commissioner did not adopt the ALJ's conclusion No. 7, concluding instead:

Unemployment benefit eligibility is premised in part on proof the claimant was able, available, and actively looked for work during each week benefits were claimed. RCW 50.20.010(c). Here, the employer's reply to the claimant's petition for review raises the issue of the claimant's compliance with the above cited statute. The claimant's most recent seven years of work experience has been limited to auto-finance. However, the claimant admittedly has not applied for any jobs with car dealerships during the weeks at issue. Whether (or not) such job opportunities existed in the claimant's labor market area is a point of conflict. The issue (raised by an aggrieved party, the employer) merits further consideration.[23]

The Commissioner then ordered, "The issue of claimant's compliance with RCW 50.20.010(1)(c) during the weeks at issue is REMANDED to the Department for further consideration and determination."[24]

Contrary to Tang's characterization of the record, the Commissioner did not consider Babcock's final statement as evidence of whether finance jobs at car dealerships were available during the weeks at issue. Instead, the Commissioner found that Babcock's statement at the hearing, as well as a similar statement in his response to Tang's petition for review before the Commissioner, identified a conflict between the parties justifying remand to the Department for

---

[22] Clerk's Papers at 7.
[23] Id. at 10.
[24] Id.

further consideration.  Tang fails to argue or establish that the order was invalid or exceeded the Commissioner's authority.[25]

Affirmed.

_____ Cox, J.

WE CONCUR:

_____ Leach, C.J.

_____ Dwyer, J.

---

[25] See RCW 50.32.080 (Commissioner's review procedure.  After having acquired jurisdiction for review, the commissioner shall review the proceedings in question.  Prior to rendering his or her decision, the commissioner may order the taking of additional evidence by an appeal tribunal to be made a part of the record in the case.  Upon the basis of evidence submitted to the appeal tribunal and such additional evidence as the commissioner may order to be taken, the commissioner shall render his or her decision in writing affirming, modifying, or setting aside the decision of the appeal tribunal.  Alternatively, the commissioner may order further proceedings to be held before the appeal tribunal, upon completion of which the appeal tribunal shall issue a decision in writing affirming, modifying, or setting aside its previous decision.  The new decision may be appealed under RCW 50.32.070.  The commissioner shall mail his or her decision to the interested parties at their last known addresses.).